(102 So. 303)

No. 26281.

### HEMSING v. WIENER–LOEB GROCERY CO.

(Nov. 3, 1924. Rehearing Denied Dec. 1, 1924.)

*(Syllabus by Editorial Staff.)*

1. **Specific performance ⊗⇒121(11)—Evidence held not to establish that lessee fraudulently affixed to lease substituted sketch of premises.**

In suit by lessee to compel specific performance of written contract of lease, defendant lessor *held* not to have established by preponderance of evidence that lessee fraudulently annexed to lease substituted sketch of leased premises, which called for more space than was shown on original sketch.

2. **Landlord and tenant ⊗⇒34(2)—Lessor held not entitled to annul lease because of lessee's inadvertence, resulting in check for initial rent being dishonored.**

Lessee's inadvertence in signing check for initial rent with wrong signature, resulting in dishonor, *held* not to entitle lessor to annul lease, where lessee was able and willing to pay check as soon as payment was demanded of him.

Land, J., dissenting.

Appeal from First Judicial District Court, Parish of Caddo; E. P. Mills, Judge.

Suit by Maurice Hemsing against the Wiener-Loeb Grocery Company. Decree for plaintiff, and defendant appeals. Affirmed.

W. M. Phillips and Earl L. Wiener, both of Shreveport, for appellant.

Palmer & Hardin, of Shreveport, for appellee.

By the WHOLE COURT.

ST. PAUL, J. [1] This is a suit to compel specific performance of a written contract of lease entered into between plaintiff as lessee and defendant as lessor, calling for a floor space in one of defendant's chain stores of 16 feet by 40. The principal defense is that the space agreed upon was 12 feet by 40, and so marked on an informal sketch thereof; but that plaintiff fraudulently made out and substituted therefor the sketch annexed to the lease, which calls for 16 feet, instead of 12.

The judgment below was for plaintiff, and defendant appeals.

Mr. Loeb, defendant's vice president, testifies that he turned plaintiff over to Mr. Weil, the manager, to arrange about the space; that later on plaintiff came to him with a slip of yellow paper, on which the space agreed upon between plaintiff and Weil was sketched, and that sketch showed the space to be 12 feet wide; that Weil was called up to confirm the sketch, and did so; that thereafter plaintiff made the two alleged copies of said sketch, annexed to the original lease and duplicate thereof (which said sketches are duly signed by Loeb). See Tr. 73. Later on Loeb testified:

"I 'suppose Mr. Weil mentioned something about the status of the lease, and I was naturally under the impression it was a 12-foot space that he was to get, and I signed it with that intention." Tr. 79.

And again:

"I overlooked that space—the 16 feet that was on there. Of course I thought Weil—whatever he had agreed with him was all right with me." Tr. 80.

And still further on, as follows:

"Question: Do you mean to tell me when you signed this lease that Mr. Weil never did tell you and you didn't know what width space he had agreed to lease? Answer: He hadn't told me the number of feet; no, sir.

"Question: Didn't he tell you the width? Answer: No, sir; I just turned it over to him and told him whatever he agreed on with Mr. Hemsing—he knew how he was going to arrange his store and whatever he was going to give him was satisfactory to me." Tr. 89.

Mr. Weil testified that the space agreed upon was 12 feet, which was shown on the yellow slip, and that there was but one sketch on that slip; that he only agreed upon the space, and Mr. Loeb fixed the price. Tr. 101.

Mr. Rucker, the carpenter, testified that he measured up the space in the presence of Weil and plaintiff; that it was 12 feet, but that they had not come to any final agreement then, and he does not know what was the final agreement.

Mr. Loeb and Mr. Weil both testified that the discrepancy was discovered by Weil on the day after the signing of the lease (September 6th), or on the next day.

Plaintiff testified that Weil fixed the space, but Leob was to fix the price; that the yellow slip had sketches of two spaces upon it, one 12 by 20, for $125, and one 16 by 40, for $175, and Loeb told him he could take his choice; that he chose the 16 by 40 space, being that described in the sketch annexed to the lease (signed by both parties). Tr. 67.

## II.

The lease called for payment of the rent monthly in advance; and at the time of signing the lease plaintiff gave defendant his personal check on the Commercial National Bank of Shreveport. This check was turned down by the bank next day, because, although plaintiff had ample funds in the bank to meet it, he had opened the account as "Federal Baking System, per Maurice Hemsing," in which name he intended doing business.

On the following day, September 8th, the very day, or day after, the alleged discovery of the discrepancy in the lease, defendant telegraphed plaintiff at Davenport, Iowa:

"Your check $175 payment rent Dickinson lease returned reason no account with Commercial National Bank. The honor of this check having been considered by us as of the essence of the contract we consider contract broken and are suing to annul."

On the next day (September 9th) plaintiff wired both defendant and the bank about the check; and same would have been paid had defendant been willing to receive it.

On the same day (September 9th) defendant's attorney wired plaintiff:

"Matter of Wiener-Loeb lease has been referred to me. I take position that lease broken, and am suing for my client for cancellation."

On September 15th, defendant brought suit in the city court of Shreveport for cancellation of the lease, on the twofold ground of the nonpayment of said check, and of the alleged fraud by which said lease was obtained. This suit was later discontinued, because of want of jurisdiction in said court.

On December 26th, defendant offered (in a very friendly letter) to renew negotiations with plaintiffs for another space 8 feet by 20, for $150 (which came to naught). On January 15th, plaintiff brought this suit.

## III.

Considering the foregoing testimony and circumstances recited, we do not conclude that defendant has established by a preponderance of evidence its allegation of fraud on the part of plaintiff.

## IV.

[2] Nor do we think that defendant has just cause to annul the lease because of plaintiff's inadvertent error in the signing his check as he did. Defendant was offered its money, and could have had it before it even brought suit to annul the contract. Our

law does not contemplate that contracts shall be annulled by one party, where the other party is able and willing to perform his own part of it as soon as demanded of him. Watson v. Feibel, 139 La. 375, 71 So. 585.

#### Decree.

The judgment appealed from is therefore affirmed.

O'NIELL, C. J., takes no part, not having heard the argument.

LAND, J., dissents.