Victor **TOUCHET**

v.

**HUMBLE OIL & REFINING COMPANY.**

Civ. A. No. 7587.

United States District Court
W. D. Louisiana,
Lake Charles Division.

June 27, 1960.

⬿318

Aaron & Aaron, Crowley, La., for plaintiff.

Plauche & Stockwell, Lake Charles, La., for defendant.

HUNTER, District Judge.

Touchet seeks cancellation of an oil, gas and mineral lease on land in Acadia Parish, Louisiana. The lease was granted by Touchet to Duson on February 21, 1955. The lease was subsequently assigned to defendant and stands in defendant's name upon the records. The land was made part of a voluntary unit of 160 acres by instrument dated June 26, 1957, and a unit well was completed as a producer, and plaintiff was paid royalties monthly by defendant from the date of the production of the unit until March of 1959, when the Commissioner of Conservation issued an order unitizing and pooling various lands and leases, including the subject lease, in a 416-acre unit. The creation of this new unit, effective March 1, 1959, required Humble to have the unit surveyed and the survey to be approved by the Commission, and also required a re-check of the title to the various tracts included in the unit and the preparation of new division orders covering percentage of participation. While these various steps were being taken by Humble, royalty payments were discontinued. A final title opinion was received by Humble on June 12th, and thereupon the preparation of division orders to be sent to each royalty owner was begun. The division order was mailed to Touchet on July 10, 1959. However, in the meantime Victor Tou-

chet, having failed to receive a check in April, May or June, demanded by letter dated July 1st that Humble furnish to him a recordable release of the lease. No prior demand had been made by Touchet, either verbally or in writing, for the payment of the royalties, nor had Humble refused to pay the royalties. Humble, at all times since the demand, has stood ready and willing to pay the royalties to Touchet, but Touchet refuses to accept same, and relying on Melancon [1] filed this suit on the 29th day of September, 1959, demanding cancellation. Plaintiff concedes that the lease agreement did not provide for the time and place of the payment of royalties, but asserts that in Louisiana royalties from production must be paid on a monthly basis, and that the lessee has an obligation to continue to pay those royalties on a monthly basis as long as there is continuous production in paying quantities. Defendant does not, in fact cannot, challenge this assertion as a general principle of Louisiana law. However, defendant insists that before bringing such a suit as this, plaintiff must first demand the payment of royalties and show that defendant refused to pay, or that there was an unreasonable delay in payment after demand. Secondly, defendant argues that even if no demand were necessary, it would nevertheless be unjust to cancel under the facts of this case without giving the operator a reasonable opportunity to perform the investigative and administrative details necessary to figure the percentage of participation in the new unit.

The case was tried to the Court without a jury on stipulated facts, affidavits and exhibits. The detailed facts are these:

(1) Plaintiff is a resident and citizen of Louisiana.

(2) Defendant, Humble Oil, is a foreign corporation authorized to do, and at all times pertinent doing business in Louisiana.

(3) The matter in controversy exceeds, exclusive of interest and costs, the sum of $10,000.

(4) Victor Touchet granted an oil, gas and mineral lease to Henry T. Duson on February 21, 1955, covering 27 acres. This lease was assigned by Henry T. Duson to Humble Oil & Refining Company on May 13, 1955.

(5) Humble created a voluntary unit on June 26, 1957, consisting of 160 acres.

(6) On November 2, 1957, Unit No. 17, Well No. 1, was spudded in on the voluntary unit and completed on January 23, 1958, as a well producing gas and condensate. The cost of the well was $288,487.

(7) Humble paid royalty from production of said unit well to Touchet through March 1, 1959, the last such payment being made for gas on or about March 24, 1959, and for condensate on or about March 18, 1959, for production during the month of February, 1959.

(8) The Louisiana Commissioner of Conservation held a hearing to unitize the North Crowley Gas Sands, including a portion of the property of Victor Touchet covered by lease referred to herein, and an order was issued effective March 1, 1959, unitizing and pooling various lands and leases, including 24.38 acres of the land of Victor Touchet, in a 416-acre unit.

(9) Humble North Crowley Gas Unit No. 16, Well No. 1, was designated as the unit well and was producing on March 1, 1959, and is still producing at this time. This well was drilled, completed and equipped at a cost of $319,868.

(10) Order No. 423-j issued by the Commissioner establishing the new units was filed for record on March 11, 1959.

(11) Order No. 423-j also required that the new unit be surveyed.

(12) On April 29, 1959, Humble received the final survey unit plats and forwarded them to the Department of Conservation for approval and these plats were approved on May 12, 1959.

1. Melancon v. Texas Company, 230 La. 593, 89 So.2d 135.

(13) The division order title opinion covering the unit was rendered by Mr. Ellis Barnes on June 10, 1959, and was received in the Houston office on Friday, June 12th, or Monday, June 15, 1959, and actual preparation of the division order to be sent to each royalty owner then started. This involved detailed work in securing current names and addresses; computation and checking of each individual royalty interest; and clerical and stenographic work involved in the actual typing, mimeographing, folding and mailing the division orders to each of the numerous parties involved. The division order was mailed to Victor Touchet for his execution on July 10, 1959.

(14) The new unit consisted of 416 acres, whereas the voluntary unit was 160 acres and the unit included numerous tracts and ownerships as shown by division order which was sent to Victor Touchet by letter dated July 10, 1959.

(15) On the date of the division order there was no change in the ownership of the property owned by Victor Touchet.

(16) After the creation of the new units on March 1, 1959, defendant ceased paying royalty under the voluntary unit.

(17) No demand, either written or verbal, was made by Touchet for the payment of royalty after March 1, 1959 until he demanded a cancellation of the lease by letter dated July 1, 1959. Thereupon, Humble contacted Touchet and royalty payments were mailed to Touchet on July 27, 1959.

(18) Touchet refused to accept the royalty payments mailed to him on July 27, 1959, and instituted this suit on September 29, 1959.

(19) In the case of royalty based on oil and gas production, it is the accepted custom, as reflected by this very record, to make such payments on a monthly basis.

(20) No time was fixed in the lease agreement for the payment of royalties, and the lease did not expressly provide for its termination on the failure of payment.

## The Law

We are governed by the law of Louisiana. The threshold question is: *Under the facts of this case, must the lessor make a demand for payment of royalties before he is entitled to a cancellation of the lease because of their non-payment?*

■■ We take it to be fundamental under the codal law of Louisiana that an omission or failure to act is not an active, but only a passive, breach of contract. Article 1931, LSA–Civil Code of Louisiana;[2] Brown v. Sugar Creek Syndicate, 195 La. 865, 197 So. 583; Billeaud Planters, Inc. v. Union Oil Company of California, 5 Cir., 245 F.2d 14. Equally fundamental under Article 1933 of LSA–Civil Code is the proposition that "when the breach has been passive only, damages are due from the time that the debtor has been put in default. Humble was not put in default here, so the relevant inquiry quickly becomes: Was Humble guilty of an active violation of its obligation to pay royalties?

■ Plaintiff relies on Melancon (supra), which is not applicable for at least two reasons: First, there, the Louisiana Supreme Court affirmed the lower court's specific finding that the defendant actively violated its obligation because "*the non-payment of royalties by the defendant was not the result of negligence or inadvertence, but a studied and purposeful nonfeasance designed and intended to pressure the plaintiff into the acceptance of an enlarged production unit contrary to his express desires and the terms of the contract.*" [230 La. 593, 89 So.2d 139] Secondly, the Louisiana Supreme Court there found as a fact that demand had been made for payment of royalties on at least three occasions, and that these demands were made in the presence of at least two witnesses. Melancon judi-

2. "Art. 1931. A contract may be violated, either actively by doing something inconsistent with the obligation it has proposed or passively by not doing what was covenanted to be done, or not doing it at the time, or in the manner stipulated or implied from the nature of the contract."

cially recognizes that in the case of royalty based on gas and oil production, it is accepted custom to make such payments on a monthly basis, and that where there is an active and positive violation of this implied obligation, no demand is necessary to place lessee in default. Humble has never refused to pay the royalties nor has it questioned plaintiff's right to them. Certainly, Humble has not been guilty of any studied and purposeful non-feasance, designed to pressure Touchet. They paid the royalties to Touchet on the voluntary unit until the effective date of the Commissioner's order setting up a new unit, and then discontinued paying him temporarily while they took necessary, reasonable and precautionary· steps to work out the percentage participation in the new unit. The facts here as we have detailed them clearly show that lessee's breach, if any, consisted solely of its failure or omission to do that which it had bound itself to do—that is, to pay the royalties on a monthly basis in accordance with custom and usage, and it is the codal law of Louisiana that an omission or failure to act is not an active, but only a passive, breach of the contract. We therefore conclude as a matter of law that Touchet was not entitled to cancellation of this lease, without first making demand on Humble for payment of the royalties.

 We reach the conclusion in the foregoing paragraph, even accepting plaintiff's contention that the Louisiana custom and usage of paying royalties on a monthly basis is to continue uninterrupted when there is a change in the unit structure. Melancon is not authority for that. It is true that once the administrative details have been accomplished that royalties in accordance with usage and custom are to be paid on a monthly basis, but between the completion of a well or the formation of a new unit and the first royalty payment thereon, there must be some time lag to complete the details necessary to effect these payments. It has long been a maxim of the civil law that where no specified time for performance is agreed upon, the penalty of forfeiture shall not be invoked unless demand for performance has been made by the obligor and a reasonable time has been allowed the obligee to perform the obligation. *There is no custom or usage as to what is a reasonable time under the circumstances of this case.* There is no fixed time in the lease agreement, no fixed time by usage or custom, and no provision for the termination on the failure of payment of royalties. Accordingly, a plaintiff, before bringing a suit such as this, must first demand payment of royalties and show that defendant refused to pay royalties, or that there was an unusual delay of payment of royalties after the demand. (Articles 1931–1933 LSA–Civil Code). In the absence of a demand the delay here is not considered unusual.

 In view of our stated conclusions it is unnecessary to discuss the alternate defense, but we briefly do so. Assuming no demand was necessary, we believe it would be unjust to cancel this lease without giving the operator a reasonable opportunity to perform its obligations. Louisiana has never followed a dogmatic rule requiring the mechanical application of a general rule that a lessor may dissolve a lease for failure on the part of lessee to pay rent promptly when due. On the contrary, in Louisiana the right to dissolve a lease is subject to judicial control according to the circumstances.

In Edwards v. Standard Oil Company, 175 La. 720, 144 So. 430, 431, the Court said:

"Moreover, where 'defendant was offered its money, and could have had it before it even brought suit to annul the contract (lease),' he cannot annul the lease for alleged nonpayment of the rent. 'Our law does not contemplate that contracts shall be annulled by one party, where the other is able and willing to perform his own part of it as soon as demanded of him.' Hemsing v. Wiener-Loeb Grocery Co., 157 La. 189, 102 So. 303, 304."

And again:

"Hence, although 'it is true that ordinarily a lessor may dissolve a lease for failure on the part of the lessee to pay the rent promptly when due, (nevertheless) the right to dissolve a lease is subject to judicial control according to circumstances.' Brewer v. Forest Gravel Co., 172 La. 828, 135 So. 372, 373, citing, Sieward v. Denechaud, 120 La. 720, 45 So. 561; Prude v. Morris, 38 La.Ann. 767, 769, See, also, Saxton v. Para Rubber Co., 166 La. 866, 118 So. 64; Schnaider [Shnaider] v. Graffagnini, 154 La. 363, 97 So. 491; Bonnabel v. Metairie Cypress Co., 129 La. 928, 57 So. 271; Standard Brewing Co. v. Anderson, 121 La. 935, 46 So. 926, 15 Ann.Cas. 251."

Again in Rudnick et al. v. Union Producing Co., 209 La. 943, 25 So.2d 906, 908, the Louisiana Supreme Court asserted:

"In Louisiana, the right to dissolve a lease is subject to judicial control according to the circumstances. Brewer v. Forest Gravel Company, Inc., 172 La. 828, 135 So. 372, and cases there cited. In this case there were grounds for honest doubt as to the rights of the parties. This Court has not, and will not, penalize a litigant lessee by dissolving a lease held technically in default when there is a bona fide defense. The plaintiffs request for cancellation should, therefore, be denied.

"Since we hold the lease to be in force, it becomes unnecessary to pass separately on defendant's plea that plaintiffs are estopped from attacking same."

We are satisfied that plaintiff's demands should be rejected. They are.