166 So.2d 329 (1964)
Sam BROADHEAD, Plaintiff-Appellant,
v.
PAN AMERICAN PETROLEUM CORPORATION et al., Defendants-Appellees.
No. 1220.
Court of Appeal of Louisiana, Third Circuit.
July 10, 1964.
Rehearing Denied July 30, 1964.
Writ Refused October 14, 1964.
*330 Robert J. Moffatt and Noel L. Adams, Jr., Shreveport, for plaintiff-appellant.
Gaharan & Richey, by Leonard W. Richey, Jena, for defendants-appellees.
Before TATE, FRUGE and SAVOY, JJ.
SAVOY, Judge.
On April 28, 1961, plaintiff granted to Pan American Petroleum Corporation, hereinafter referred to as "Pan Am", an oil, gas and mineral lease covering a contiguous tract containing in excess of 23,000 acres of land. The lease granted by plaintiff was the ordinary commercial lease form used by the oil and gas industry. Under the terms thereof, plaintiff received a cash bonus and 1/6 of any oil or gas recovered from said property. There were no drilling operations conducted on the property during the primary term of the lease. Shortly before the expiration of the first year of the primary term of the lease, Pan Am paid delay rentals in accordance with the provisions of said lease. This had the effect of maintaining the lease for an additional one-year period.
In the year 1962, Pan Am sublet to Justiss-Mears Oil Company, Inc., a portion of the land which it has leased from plaintiff. Pan Am, or its assignee, Justiss-Mears, drilled 17 wells on said land in controversy. All of said wells were non-productive.
On or about September 26, 1962, Justiss-Mears made a discovery well on some of the property owned by plaintiff and sublet to it by Pan Am.
On October 24 and November 16, 1962, Pan Am completed two producing oil wells on a portion of the land under lease.
On the second anniversay date of the lease, namely, April 28, 1963, Pan Am was drilling a well on the instant property, which well was completed as a producer on May 7, 1963.
On the latter date, neither Pan Am nor Justiss-Mears had paid any royalties to plaintiff.
On May 31, 1963, plaintiff filed suit against Pan Am, Justiss-Mears, and several assignees of Justiss-Mears, for a cancellation of the lease dated April 28, 1961, for the reason that defendants did not pay plaintiff the royalties due him within a reasonable time after the discovery of oil on his land, and, consequently, they violated said lease, and he is entitled to a cancellation thereof. Plaintiff prayed alternatively for cancellation for non-payment of delay rentals.
To this suit defendants filed numerous exceptions and pleas, some of which were granted and others of which were overruled. Plaintiff filed several supplemental petitions. After all the preliminary matters were disposed of by the trial judge, defendants filed answers and a motion for a summary judgment. Supporting affidavits were attached to the motion. Plaintiff did not contradict material allegations attached to said motion. Plaintiff then filed a motion for a judgment on the pleadings.
After a hearing on the summary judgment, the trial judge maintained same and dismissed plaintiff's suit. This appeal followed.

MAIN DEMAND
Although defendants have advanced several grounds in resisting the efforts of plaintiff to cancel the lease, this Court will discuss *331 the main demand of plaintiff, namely, that defendants did not pay him royalties on his land within a reasonable time after discovery of oil thereon.
The record reflects that the land involved in the instant suit was in wildcat territory. There had never been any production on the acreage leased at the time of the execution of the lease in the instant case.
The trial judge, in his written opinion, made the following finding of fact:
"This lease covered a large tract of land, almost twenty-four thousand (24,000) acres. At the time the lease was executed, the lessee borrowed from lessor his abstracts of titlesome twelve books or volumes containing over two thousand (2,000) pages. Early thereafter, Pan Am satisfied itself on its working interest title as lessee but it pointed out to lessor, the plaintiff, as early as May 16, 1961, that there were serious title problems on the ownership of the royalties which would become payable under the lease. Title requirements, as to the royalty interests were against brought to the attention of plaintiff in the early part of 1963. It does not appear that plaintiff took any action on his part to clear up his royalty interest title or that he ever cooperated with defendants to do this, other than lending his title abstracts as aforesaid. And, of course, it must be noted and pointed out that the abstracts were not up to date at the time of production. When they were loaned, it was in April of 1961." (Nor did plaintiff put the defendants on notice that he did not intend to cooperate in clearing his title as requested. In fact, in a conference with lessee's counsel, he indicated he would furnish assistance by Louisiana counsel, following which lessee heard nothing further until a month later when they received a formal demand for cancellation of said lease.)
"The record shows, too, that after production, an outlet had to be found to market the oil. This land is a low swamp area. Pipelines has to be constructed in this terrain to Red River, and Indiana Oil Purchasing Company, became ultimate purchaser of the oil production on December 22, 1962. Pan Am, Justiss-Mears and their attorneys, immediately undertook curative work to clear up the royalty interests of some forty odd owners, still without the help or cooperation of plaintiff, himself a purchaser of these questioned royalty interests, at the instance of this pipeline purchaser.
"On May 10, 1963, a letter from Pan Am was sent to the various royalty owners including plaintiff, and a division order from Indiana Oil Purchasing Company, accompanied same, for the signatures of the various royalty owners. But the day before, May 9, 1963, plaintiff had mailed to defendants, a letter demanding cancellation of the lease. Of course, he did not even sign the division order and persisted in his demand for cancellation of the lease and suit was filed for that purpose on May 31, 1963. * * *"
As a basis for the cancellation of the lease, plaintiff relies on the cases of Melancon v. Texas Company, 230 La. 593, 89 So. 2d 135; Bollinger v. Texas Company, 232 La. 637, 95 So.2d 132; Bailey v. Meadows (La.App., 2 Cir., 1961), 130 So.2d 501, cert. den.; and, Pierce v. Atlantic Refining Company (La.App., 3 Cir., 1962), 140 So.2d 19, cert. den.
This Court has carefully examined the above cases and finds that they are distinguishable from the case at bar.
In the Melancon and Bollinger cases, supra, the Supreme Court held that failure to pay royalties to the lessors 15 months after production was not reasonable where there were no title questions involved, but the lessee was attempting to have the lessors consent to the creation of a larger unit than was originally contemplated.
In the Bailey case, supra, the Court of Appeal, Second Circuit, followed the Melancon and Bollinger cases, supra, and cancelled the lease where the lessee did not pay to the lessors royalties 18 months after production had been discovered on the lessors' *332 property. The court found there was no reasonable ground for delaying the royalties being paid for that length of time.
In the Pierce case, supra, this Court held that the failure to pay royalties to the lessor within 7 months after production was found was unreasonable and ordered a cancellation of the lease, stating that the well involved was in a developed oil field. The lessee did not show a justifiable cause for the delay in making such payment.
In the recent case of Fawvor v. U.S. Oil of Louisiana, Inc., (La.App., 3 Cir., 1964), 162 So.2d 602, cert. den., this Court held that a lapse of some 8 months after a gas well was brought in until payment of royalties was not unreasonable under the circumstances. We recognized that certain boundary problems not created by the lessors excused some delay.
In the instant case the record reveals the wells were drilled in wildcat territory; and that the oil initially produced from said wells was sold to Placid Oil Company, the first shipment being made on October 7, 1962. A pipeline had to be constructed to the wells, and the Indiana Oil Purchasing Company commenced purchasing the oil on said tract through the pipeline facilities on December 22, 1962.
The record also reflects that defendants and their attorneys undertook curative work so as to make it possible to pay approximately forty royalty owners their proper shares of royalties from the said wells. Plaintiff never did help or cooperate with defendants in said undertaking although he had purchased some of the questioned royalty interest, and despite reasonable request for his assistance in the matter.
On May 10, 1963, Pan Am sent to the various royalty owners, including plaintiff, a division order for the purchaser of said oil on said tract, namely, Indiana Oil Purchasing Company, for their signatures. However, on the previous day, plaintiff mailed to defendants a letter demanding a cancellation of the lease.
Counsel for plaintiff contend further that defendants acknowledge owing him a 19.833% Royalty interest in the oil produced from the wells in the instant case; and therefore, they were not in good faith in not paying this amount since they eventually acknowledged he was entitled to this percentage of the royalties without qualification.
The answer to this contention is that if defendants did not do what they agreed to do, under the facts of the instant case, this merely constituted a passive breach of the contract. LSA-C.C. Art. 1931. When the breach of a contract is a passive one, putting in default is required. LSA-C.C. Art. 1933. Plaintiff never did place defendants in default in the instant case.
Plaintiff did formally request cancellation of the lease just prior to the filing of said suit. However, he never formally placed the lessee's interests in default for their non-payment of royalties; that is, he never formally requested payment of same, and thus he never gave lessee's interests notice that he regarded the lease as breached by their delay in paying royalties, so as to afford them a reasonable opportunity to comply with the contract.
Our courts, both State and Federal, have held that the failure to perform an obligation in an oil and gas lease is a passive breach requiring a putting in default. Brown v. Sugar Creek Syndicate, 195 La. 865, 197 So. 583; Pipes v. Payne, 156 La. 791, 101 So. 144; Billeaud Planters v. Union Oil Company of California, 5 Cir., 245 F.2d 14; and, Touchet v. Humble Oil & Refining Company, D.C., 191 F.Supp. 291. This is an additional ground for distinguishing the instant case from the Melancon, Bollinger, Bailey and Pierce cases, supra. In the last four named cases, the Supreme Court recognized the above stated rule concerning passive breach of a contract; but held under the peculiar facts of these cases, there was an active breach which did not require placing the lessees in formal default as a prerequisite *333 to suing for cancellation of the leases. In those cases, an unreasonable delay without justification in paying royalties, under the circumstances peculiar to each case, was held to constitute an active rather than a passive breach.
In view of all the circumstances involved in this case, this Court is of the opinion that the delay of approximately eight months in tendering royalty payments to plaintiff was not unreasonable so as to constitute an active breach of the contract, and the trial court correctly sustained defendants' motion for a summary judgment.

ALTERNATIVE DEMAND
The trial court sustained a motion to strike the allegations of plaintiff's petitions concerning the alternative demand for cancellation for non-payment of delay rentals.
Under the terms of the original lease, defendants either had to pay a cash rental on the anniversary date the lease became due, or had to be drilling a well or wells on the property if the cash payments were not made on said date. The record reveals that Pan Am paid the delay rentals on April 28, 1962, thereby renewing said lease for an additional year. Prior to and on April 28, 1963, the second anniversary date of the lease, Pan Am was drilling a well on said property, which drilling kept the lease in force.
There was thus no necessity under the pleadings and the terms of the lease for the lessees to pay delay rentals, and we affirm the trial court's sustaining of the motion to strike this alternative demand.
For the reasons assigned, the judgment of the district court is affirmed at appellant's costs.
Affirmed.

On Application for Rehearing.
En Banc. Rehearing denied.