271 So.2d 561 (1972)
Horace H. ALVORD, III, Plaintiff-Appellee,
v.
SUN OIL COMPANY et al., Defendants-Appellants-Appellees.
No. 11974.
Court of Appeal of Louisiana, Second Circuit.
November 28, 1972.
Rehearing Denied January 9, 1973.
Concurring Opinion January 15, 1973.
Writ Refused March 1, 1973.
*562 Oliver & Wilson by C. McVea Oliver, Monroe, Shuey, Smith & Carlton by John M. Shuey, Shreveport, for defendants-appellants-appellees.
Bethard & Bethard by Henry W. Bethard, III, Coushatta, for plaintiff-appellee.
Before BOLIN, PRICE and HALL, JJ.
En Banc. Rehearing Denied January 9, 1973.
BOLIN, Judge.
Plaintiff instituted this action to cancel a series of three oil, gas and mineral leases for failure to pay royalty for the production of oil from land under which he owns a mineral interest. Coupled with this action was a demand for payment of fees to an attorney employed by plaintiff to prosecute the suit. The lower court first sustained a plea of prematurity upon a finding that all leases in question contained a provision requiring lessees be given 60 days notice before cancellation of a lease in the event of cessation of "operations". On appeal this court held failure to pay production royalty was not an "operation" as used in the leases, overruled the plea of prematurity and remanded the case to the lower court for trial on its merits. See Alvord v. Sun Oil Company et al. (La. App.2d Cir. 1971), 251 So.2d 659. Following trial judgment was rendered in favor of plaintiff cancelling the mineral leases, awarding plaintiff $5,000 attorney's fees and fixing the fees of the court-appointed attorney. Defendants appeal and plaintiff answers the appeal seeking an increase in the amount awarded for attorney's fees. We reverse the ruling of the district court, except with regard to the amount awarded the attorney for absentee defendants.
The three leases were executed at various times by plaintiff's ancestors in title *563 and were acquired by R. O. Roy who, together with his children, Robert Roy and Mrs. Corinne Roy Kelly, are the present lessees. For the sake of brevity these defendants will hereinafter be referred to as the Roys.
Plaintiff owns one-half of the minerals under 282.54 acres of land in the Red River-Bull Bayou Field of Red River Parish, which was acquired subject to the Roy lease. Plaintiff's one-half mineral interest is also subject to a mineral royalty of one-thirty-second of the whole owned by Mary Boylston Kyle, Frances C. Atkinson, Joe D. Crichton, John Alston Crichton and Henry Jones Gruy. The above named royalty owners were made party defendants and appeared through an attorney at law appointed to represent them. Medical Research, Inc., which owns a percentage right to production, was also made a defendant. Neither Medical Research nor the above-named royalty owners have appealed.
Also named defendants were Charles T. McCord, Jr., Jack W. Grigsby, Jane H. Grigsby, William T. Murphy, III, Marlin Risinger, Jr., Helen C. Carver d/b/a Anthony Oil Company, Morgan W. Walker and Sun Oil Company, all of said parties deriving their interests from a sub-lease from the Roys to William T. Murphy III, and accordingly are sub-lessees or sub-lessees holding under the Roys.
The Louisiana Department of Conservation issued a fieldwide order affecting the Tuscaloosa sand of the Red River-Bull Bayou Field. The property affected by this litigation was designated as Tract 13. Under the original order Jack W. Grigsby was designated as unit operator. The order was later amended so as to substitute Sun Oil Company as operator instead of Grigsby. Production from the unit consists of oil which was being delivered by the unit operator to the pipelines of a crude oil purchasing company. Benton B. Box, from whom plaintiff acquired his mineral interest, executed a division order to Grigsby authorizing Grigsby to sell his oil. Plaintiff received payment for his proportionate share of the oil sold by Grigsby until February 1, 1969, the date Sun Oil became the operator.
Robert L. Marshall, head of the division order section of Sun Oil Company, testified that when Sun Oil became the unit operator new division orders were "published". He explained it was in the best interest of both Sun and the royalty owners to update and make current the names and addresses of those persons entitled to receive payment, together with the correct amount to be received by them. The new division orders were sent to all royalty owners with the instructions to execute and return them to the company. Marshall said it was not company policy to require a mineral owner to sign a new division order as a condition precedent to receiving his royalty payment and if nothing was heard from a division order within at least 90 days payment would be made under the division order acquired by Sun from Grigsby.
Plaintiff testified he received the division order from Sun Oil but neither signed nor returned it. He explained he did not sign it because he thought it was unnecessary. In this connection the evidence is uncontradicted that plaintiff was experienced in the oil and gas business, having done extensive work in the Bull Bayou Field. He was familiar with the original division order under which Grigsby was operating and in fact aided him in securing some of the signatures thereto. In any event, Sun Oil, through oversight or inadvertence, failed to pay plaintiff from and after February 1, 1969. Plaintiff, through his attorney, wrote two letters to Sun Oil Company dated February 4, and February 6, 1970, demanding cancellation of the leases. This was the first notice of any kind Sun Oil had received from plaintiff. Shortly thereafter, Sun Oil made verbal offers as well as an official tender of the amount due, all of which were refused by plaintiff, precipitating this litigation.
*564 The lower court did not assign written reasons for its judgment. Defendants-appellants specify a number of errors:
(1) In failing to sustain an exception of no right of action filed on behalf of numerous defendants based on the lack of privity of contract between plaintiff as a lessor and defendants as sub-lessees, the contention being that if the status of defendants had been as assignees instead of lessees there would have been privity but as sub-lessees no such privity exists. Following this argument to its logical conclusion, it is then contended plaintiff has only a right to sue a sub-lessee or a unit operator for an accounting for money due for oil sold on behalf of a lessor or mineral owners.
(2) In finding there was an active breach of the oil and gas lease obviating the necessity of plaintiff putting defendants in default in order to cancel a lease for the nonpayment of royalties for the production of oil.
Since we conclude there was no active breach of the oil and gas lease, we shall pretermit a discussion of the validity of the exception of no right of action and address ourselves to the second specification, our resolution of which will make unnecessary the consideration of the first error specified above.
In this state the courts have likened the payment of production royalties under an oil and gas lease to rent and have recognized that the Louisiana Civil Code articles applicable to ordinary leases must be applied in certain cases to oil and gas leases. Since no stipulated date is normally provided in an oil and gas lease for the payment of royalties, the jurisprudence is to the effect that failure to pay production royalties for any appreciable length of time without justification amounts to an active breach which terminates the lease without the necessity of putting in default. Melancon v. Texas Company, 230 La. 593, 89 So.2d 135 (1956); Bollinger v. Texas Company, 232 La. 637, 95 So.2d 132 (1957); Bailey v. Meadows (La.App.2d Cir. 1961), 130 So.2d 501 (certiorari denied); Sellers v. Continental Oil Company (La.App.3d Cir. 1968), 168 So.2d 435; Pierce v. Atlantic Refining Company (La. App.3d Cir. 1962), 140 So.2d 19 (certiorari denied); Fontenot v. Sunray Mid-Continent Oil Company (La.App.3d Cir. 1967), 197 So.2d 715 (certiorari denied).
There are cases, however, which hold a lessor is not entitled to cancellation when a satisfactory reason for the delay of nonpayment is shown by the mineral lessee. Broadhead v. Pan American Petroleum Corporation (La.App.3d Cir. 1964), 166 So.2d 329 (writ refused); Fawvor v. United States Oil of Louisiana, Inc. (La.App.3d Cir. 1964), 162 So.2d 602; Hebert v. Sun Oil Company (La.App.3d Cir. 1969), 223 So.2d 897.
Applying the established jurisprudence to the facts of this case, it must be conceded plaintiff/lessor was not paid the amount due him as production royalty under an oil and gas lease for more than one year, which is "an appreciable length of time". Therefore the crucial question to be resolved is whether defendants have shown the failure to pay was justified.
Considering the question of whether a mineral lease should be cancelled for failure to pay production royalty to be an important question in the development of our mineral law, we deem it appropriate to comment briefly on each of the cases cited supra in this opinion.
In Melancon v. Texas Company and Bollinger v. Texas Company it was held that coercive conduct on the part of the lessee by withholding royalty payments for a period of 15 and 12 months, respectively, as a method of pressuring the lessor into giving consent to the formation of production units, constituted an active breach of the contract.
In Bailey v. Meadows there was a failure to pay production royalty for approximately 18 months. The excuse offered by *565 the lessee was that this delay was necessary in order to work out a satisfactory agreement with a unit operator, during all of which time oil was being produced and sold from lessor's property. An additional fact taken into consideration in that case was lessee's unquestioned callous inattention to the demands of some of the mineral owners for payment of their production royalties.
Pierce v. Atlantic Refining Company involved the lessee's failure to tender any royalties due for seven months following completion of a producing well in a temporary unit. After reviewing the established jurisprudence on the question, the court said:
"The most important question before this court is whether or not the delay in royalty payments from April 2, 1956 to October 29, 1956 was excusable or reasonable under the facts and circumstances of this case.
* * * * * *
"We are in agreement with defendants' argument that it is recognized that in certain cases the right to dissolve a lease for failure on the part of the lessee to pay the rental promptly when due is subject to judicial control according to the circumstances, however, we also agree with the plaintiff that the rights of the lessor to collection of his rent or royalty cannot be jeopardized by the `large' transactions and/or whims of the lessee.. . .
* * * * * *
"We do not mean to hold that a land-owner-lessor is entitled to cancellation of a mineral lease simply because the lessee fails to tender the initial royalty payments. In the instant case, a drilling unit was set up as early as May 1, 1955 and a well was completed on April 2, 1956. Despite the repeated efforts by plaintiff's attorney to secure timely payment of royalties the royalty payments were not mailed out until about October 30, 1956.
"After considering all the facts and circumstances of this case, we are of the opinion that defendants' failure to timely pay production royalties under the parties' mineral leases was not excusable and was without justification, therefore we are of the opinion that the lower court was in error in rejecting the demands for cancellation of the leases."
We also deem appropriate the following quotation from the concurring opinion by Judge Tate:
"Ultimately, I am forced, somewhat reluctantly in view of the harsh penalty of cancellation, to conclude that we cannot say that the unexplained failure of the lessee to tender royalties for more than half a year after the producing well is brought in, can be held to be a reasonable delay, especially in view of the several requests by the landowner for expedition of payment of the royalty due him.. . ."
In Sellers v. Continental Oil Company defendant failed to pay lessors' royalties for a period of 33 months and the lease was ordered cancelled. Division orders were mailed to plaintiffs by defendant on two occasions but were neither signed nor returned by them. Apparently plaintiffs never made any type of demand on defendant for the payment of the royalties. The court, in ordering cancellation of the lease, found it was not necessary for plaintiffs to establish the failure to pay royalties by defendant was due to bad faith. The basis for the holding is explained by the following quotation from the opinion:
"No explanation of defendants' failure to pay the lessors' royalties has been presented to this court. Here there was a failure to pay the royalties for a period of thirty-three months; that defendant, Continental Oil Company, knew the royalties were due plaintiffs seems beyond question in view of the fact that they were paying full royalties to John Sellers, one of the co-lessors. We are therefore unable to find that the failure *566 to pay the royalties was justified. We do not view this court's decision in Fawvor v. United States Oil of Louisiana, La.App. 3 Cir., 162 So.2d 602, as conflicting with our decision in the present case. In the Fawvor case we found that under all of the circumstances the delay in paying the royalties was justified."
In Fontenot v. Sunray Mid-Continent Oil Company the failure to pay royalties was for a period of 30 months. The mineral lease in question involved two units and defendant attempted to justify its failure to pay because it had sent plaintiff two bulky division orders affecting the two units and upon failure to receive an answer wrote plaintiff requesting that he complete the set of division orders and return them. In deciding the case the court placed much emphasis upon the fact that instead of defendant sending the royalties due to plaintiff or at least investigating why he did not wish to execute the division orders, the oil company simply retained the royalties due plaintiff for their use by placing them in a "suspense" account. It was pointed out plaintiff was an illiterate farmer and in concluding the refusal to pay the royalties was unreasonable and unjustified, the court found:
". . . We do not feel that the transmission by mail of the bulky set of these numerous and somewhat complex documents was comparable to the comparatively minor instances where division orders had previously been transmitted and returned by mail.
"The transmission by mail of this bulky series of division orders, confusing as to description of interests covered and containing stipulations which, if enforceable, would unfavorably modify some of Fontenot's rights as lessor, could not in our opinion justify Sunray withholding payment of royalties to Fontenot until he either signed the division orders or else informed them that he did not intend to do so. . . ."
In the cases where the delay in paying royalties was found to be justified, our courts have been careful to point out that each case must be decided upon its own peculiar facts and that our courts must retain judicial control over this area of our jurisprudence in order to ensure that oil and gas leases will not be cancelled unless the delay is unreasonable or is not logically explainable.
In Fawvor v. United States Oil of Louisiana, Inc., defendants withheld royalties from the creation of a production unit by the Conservation Commissioner in May 1961 until the issuance of royalty checks to plaintiffs in January 1962. In order for the lessees to make royalty payments under this new unit much preliminary work had to be done, much of which necessitated cooperation by the numerous royalty owners. After citing the pertinent Louisiana jurisprudence on the subject, we think the court accurately stated the proper method of approaching the question of justification for failure to pay production royalty under a mineral lease:
". . . But implicit in all of the above decisions is that in determining whether payment of production royalties has been unjustifiably withheld the courts must examine the facts and circumstances of each case. We cannot conclude that withholding of payments for a period of about eight months in the present case is, as a matter of law, unjustified and therefore a ground for cancellation of the lease. We must look to the facts and circumstances surrounding the nonpayment for such a period."
We also think Judge Tate, in his written reasons for refusing a rehearing, sets forth the basis of the court's refusal to cancel the lease:
"We do not here have a situation where the landowners expressed any interest, informally or otherwise, for the payment of the royalties, as was the situation in Pierce.
"Admittedly, if the failure to tender royalties had been unreasonable under the circumstances, the lessors need not place *567 the lessees in formal default, since the unreasonable failure to tender royalties sooner amounted in itself to an active breach of the lease contract. Here, however, under all of the circumstances (and especially the position of the lessors, under which no tender of the royalties was required or requested), the failure of the lessee parties to tender royalties sooner amounted at most to a passive breach of the lease obligation, requiring them to be placed in default before the lease could be cancelled."
The latest case on the subject is Hebert v. Sun Oil Company. Defendants failed to pay lessors $13.54 due for plant product royalties for a ten-month period. During this same period plaintiffs had been overpaid $13.61 for royalties on wet gas production. Defendant also failed to pay plaintiffs royalties from production of gas and gas distillate for five months, amounting to $819.77. The court refused to cancel the lease, holding the failure to pay the sum of $13.54 was "not a serious basis for cancelling the lease, particularly in view of the overpayment." The failure to pay $819.77 for five months was due to an error which occurred when the oil company revised its master allocation sheet for distribution of royalties and omitted plaintiffs' one-eighth royalty interest from gas production and overpaid the amount due plaintiffs to another royalty owner with a one-sixth interest. Upon discovery of the error defendant tendered the amount due but plaintiffs refused the payment and sued for cancellation. In rejecting plaintiffs' demands the court said:
"After reviewing the record in its entirety, we feel the defendants have adequately justified non-payment of royalties for the five-month period because of a clerical error, and accordingly, there can be no cancellation of the lease under the facts herein presented. . . ."
After a detailed analysis and study of all the cases cited and discussed herein we have concluded the failure to pay the royalties due plaintiff was inadvertent, reasonable and justified. Our conclusion is strongly influenced by the testimony of Robert L. Marshall and particularly his explanation of the manner in which the division order was handled. In this respect he said:
"Q. Was it or was it not the policy of Sun Oil Company, with respect to its interest in the Bull Bayou Field, to or not to release the payments until a division order had been received?
A. No sir. We do release payment, regardless of whether we receive a division order or not. The division order, as we look upon, it, is a stipulation of interest, and affords us a means of communicating with people, to find out whether they are there or not, whether there is any transaction in a pending status. It helps with the great volume of activity to determine this orderliness.
Q. And it is your testimony that with respect to the interest in the Bull Bayou field, that after about ninety days, you began releasing payments to people whether or not division orders had been sent you or not?
A. That's true.
Q. And that Mr. Alvord's was simply overlooked?
A. Right. We had a great volume of activity moving through these files at this time, and strange as it may seem to you, we did overlook Mr. Alvord's interest in Tract 13. The fact of the matter is that I recall receiving a demand letter. I believe it was February 4, 1970, and at the time that I looked at this thing, I thought . . . I felt that we had authorized payment. I looked in the file and was surprised to find that sure enough, he was right."
*568 We also think the actions of plaintiff were relevant to the question of whether lessors were justified in not paying the royalties due him for the period in question. As previously pointed out in this opinion, Alvord was experienced in the oil and gas business. He first became active in the Bull Bayou Field of Red River Parish "around 1964". At that time he was representing Jack Grigsby and others in buying leases in the field. He said he kept up with the development of the field and was familiar with the secondary recovery program which was initiated and later made the basis of the Conservation Commission's unitization order. He knew that this unitization agreement was ratified by Mr. Box from whom he acquired his mineral interest in Tract 13. In other words, all the testimony is convincing that plaintiff knew his decimal interest in the minerals produced from Tract 13 when Grigsby was the unit operator; that he also knew the time and circumstances surrounding the transfer of the operation of the unit from Grigsby to Sun Oil Company.
We are mindful of the pronouncements in several of the cases cited supra that the cancellation of an oil and gas lease by a lessor for failure to timely pay production royalties is a harsh remedy and, further, that each case must be decided upon its own peculiar facts in order that our courts may judicially control this important aspect of our law, both for the protection of the mineral owner as well as those engaged in the mining and production of our minerals. The failure to pay in this case was certainly not deliberate nor do we think it was unreasonable, and to cancel the lease under these circumstances would, in our opinion, be most unjust and lead to an unwarranted extension of a rule of law which was first enunciated for the protection of both the lessor and lessee.
For the reasons assigned the judgment appealed from is reversed and set aside and it is ordered that there be judgment herein in favor of the defendants, Sun Oil Company, Helen C. Carver d/b/a Anthony Oil Company, Morgan W. Walker, Medical Research, Inc., Frances C. Atkinson, Joe Douglas Crichton, John Alston Crichton, Henry Jones Gruy, Mary Boylston C. Kyle, R. O. Roy, Robert Roy, Mrs. Corinne Roy Kelly, Charles T. McCord, Jack W. Grigsby, Jane H. Grigsby, William T. Murphy, III, and Marlin Risinger, Jr., and against plaintiff, Horace H. Alvord, III, rejecting plaintiff's demands to cancel the following described oil, gas and mineral leases:
a. Oil, gas and mineral lease executed by Mrs. Fred L. Kyle, individually and as natural tutrix for the minor, Joe Douglas Crichton, and by John Alston Crichton and Frances Williams Crichton to J. H. Jackson, dated September 28, 1938, and of record in Conveyance Book 59, page 173, records of Red River Parish, Louisiana.
b. Oil, gas and mineral lease executed by J. P. Beaird and J. H. Jackson to Charles C. Lowrey dated April 24, 1943, and of record in Conveyance Book 69, page 222, records of Red River Parish, Louisiana.
c. Oil, gas and mineral lease executed by Benton B. Box, Sr., Benton B. Box, Jr., Evelyn B. Wilson, Arlene B. Shaw, Aubrey B. Box, Ollie B. Seney and Maudie B. Wimberly to R. O. Roy, dated April 30, 1946, and of record in Conveyance Book 79, page 61, records of Red River Parish, Louisiana;
only insofar as said oil, gas and mineral leases affect the one-half of the minerals, including oil and gas, owned by Horace H. Alvord, III, in the following described lands in Red River Parish, Louisiana:
Lot 2 plus 16 acres off East side of Lot 4, Northeast Quarter, Southeast Quarter *569 of Northwest Quarter, and Northwest Quarter of Southeast Quarter of Section 17, Township 13 North, Range 10 West, Red River Parish, Louisiana, comprising 282.54 acres.
It is further ordered that the demands of Horace H. Alvord, III, against the defendants Sun Oil Company, Helen C. Carver d/b/a Anthony Oil Company and Morgan W. Walker for attorney's fees are rejected.
It is further ordered that the fee of John S. Stephens, attorney appointed to represent the non-resident defendants, is fixed at Three Hundred Fifty Dollars and is taxed as costs and that plaintiff, Horace H. Alvord, III, shall pay all costs.
HALL, J., concurs and assigns written reasons.
On Application for Rehearing. Rehearing denied.
HALL, Judge (concurring).
I concur in the result reached by the majority opinion and in the denial of a rehearing, but for reasons other than those expressed in the majority opinion. In my judgment plaintiff's suit must fail because there has been no active breach of the lease obligations by the lessee or anyone whose actions are imputable to the lessee. Sun Oil, although also a sublessee, was acting in its capacity as unit operator under an order of the Commissioner of Conservation and a unitization agreement entered into by all lessors and lessees in the unit. Under the circumstances of this case, its failure to perform its obligations as operator does not amount to an active breach of the lease obligations by the lessee so as to warrant cancellation of the leases without prior demand or putting in default.