**Adam G. NUNEZ**

v.

**SUPERIOR OIL COMPANY.**

**Civ. A. No. 74–514.**

United States District Court,
W. D. Louisiana,
Opelousas Division.

Jan. 13, 1976.

Joseph E. Bass, Fred C. Selby, Max M. Morris, Adam G. Nunez, Lake Charles, La., for plaintiff.

Robert T. Jorden, Liskow & Lewis, Lafayette, La., Ward R. Jones, The Superior Oil Co., Houston, Tex., for defendant.

NAUMAN S. SCOTT, District Judge:

## RULING

Plaintiff, Adam G. Nunez, brought this suit to cancel certain oil, gas and mineral leases in the Fourteenth Judicial District Court for Cameron Parish, Louisiana. Defendant removed the case to this court on the basis of diversity of citizenship, pursuant to 28 U.S.C. § 1441. Both parties have filed cross motions for summary judgment.

The pertinent facts have been stipulated in the pretrial stipulation. Briefly stated, they are that prior to 1971 Adam Nunez and his son, Adam G. Nunez, each owned an undivided one-fourth interest in a certain piece of property of which defendant, Sun Oil Company, was lessee of oil, gas and mineral rights. On May 2, 1971 Adam Nunez died and thereafter his succession was opened with Adam G. Nunez as administrator. For a period of time after the death of Adam Nunez, Sun Oil Company continued making royalty payments for his one-fourth interest.

Around October 20, 1971, Mr. K. R. Richardson of Sun Oil Company, noticed that an earlier royalty check sent to Adam Nunez was endorsed by Adam G. Nunez as administrator of the estate of Adam Nunez. Upon making this discovery, Mr. Richardson ordered the royalty payments to Adam Nunez stopped and sent Adam G. Nunez a request for proof of death, letters of administration and other documents relating to the succession of Adam Nunez. These documents were sent to Sun Oil Company, and on the basis of these documents the Company's attorney approved payment of Adam Nunez's interest to the administration of his succession. New royalty division orders were sent to Adam G. Nunez as administrator of his father's succession, but were never returned by him to the company.

Eventually, the succession of Adam Nunez was closed and Adam G. Nunez, as sole heir, was placed in possession of his father's property, including the royalty interest at question herein. A copy of this judgment of possession and a letter requesting that further payments of Adam Nunez's interest be paid to Adam G. Nunez, as heir, were sent to the company on April 6, 1972. On June 15, 1972, the company sent a further royalty division order to Adam G. Nunez for his signature, but again this division order was not signed or returned to the company.

Nothing further was done by either party, and no royalty payments for the share originally owned by Adam Nunez were made until February 20, 1974. Sometime prior to that date, the company discovered, through an internal audit, that no royalty payments had been made for the interest at issue, and on February 20 sent Adam G. Nunez a check for $8,642.69 representing the major part of the unpaid royalties. Two other checks were sent as part payment of the withheld royalties, one on March 6, 1974 for $105.37 and one on March 20, 1974 for $17.56. On March 14, 1974 Adam G. Nunez sent the company a letter demanding acknowledgment of cancellation of the

lease, which the company refused to acknowledge. Following further correspondence, this suit was filed.

Plaintiff claims the company's failure to make royalty payments amounted to an active breach of the contract, thereby cancelling the lease without necessity of plaintiff formally putting defendant in default. Alternatively, he claims that if a formal default notice was required, his letter to the company of April 6, 1972 constitutes such notice. The company, while admitting its failure to make the payments was a breach of the agreement, argues the breach was through clerical error, therefore, a passive breach, and required a formal putting in default before cancellation would be appropriate. The company argues that the April 6, 1972 letter did not constitute a default notice, and that the March 14, 1974 letter, coming after the company discovered and endeavored to correct the error, came too late to be a default notice.

The company claims clerical error occurred at the time the June 15, 1972 division order was sent to Adam G. Nunez. The affidavit of Mr. Richardson establishes that ordinarily when a division order is sent out, a copy is placed in a tickler system for a follow-up check. Mr. Richardson alleges that this was not done in this case. Had the copy been placed in the follow-up system, a check would have been made within 30 to 60 days to see if the order had been returned by the lessor. In any event, whether the order had been returned or not, royalty payments would ordinarily be resumed at this time. In this case, however, since there was no copy of this order in the tickler system, there was nothing to bring to the attention of the company the fact that payments were not being made. It is also important to note in this regard that Adam G. Nunez did nothing to bring this to the company's attention from April 6, 1972 until payments were resumed in February of 1974.

■ Louisiana law is clear that failure to pay production royalties for an appreciable length of time without justification amounts to an active breach which terminates the lease without necessity of putting in default. *Wilson v. Sun Oil Co.,* 262 La. 1164, 266 So.2d 446 (1974); *Bollinger v. Texas Co.,* 232 La. 637, 95 So.2d 132 (1957); *Melancon v. Texas Co.,* 230 La. 593, 89 So.2d 135 (1956); *Alvord v. Sun Oil Co.,* 271 So.2d 561 (La.App. 2nd Cir. 1972); *Bailey v. Meadows,* 130 So.2d 501 (La.App. 2nd Cir. 1961); *Sellers v. Continental Oil Co.,* 168 So.2d 435 (La.App. 3rd Cir. 1968); *Pierce v. Atlantic Refining Co.,* 140 So.2d 19 (La.App. 3rd Cir. 1962).

The jurisprudence is equally clear, however, that where delay in payment is justified, there has been only a passive breach, requiring a putting in default as a prerequisite to cancellation. *Hibbert v. Mudd,* 294 So.2d 518 (La.1974); *Alvord v. Sun Oil Co., supra; Hebert v. Sun Oil Co.,* 223 So.2d 897 (La.App. 3rd Cir. 1969). In considering whether a failure to pay is justified, a court must consider each case on its own facts and circumstances. *Fawvor v. U. S. Oil Co. of Louisiana,* 162 So.2d 602 (La.App. 3rd Cir. 1964).

■ We find that the original stopping of royalty payments by the company in October 1971 was justified. Mr. Richardson noticed at that time that an earlier royalty check to Adam Nunez was endorsed by Adam G. Nunez as administrator of the succession of Adam Nunez. This certainly gave him reason to believe there had been a change in ownership of the interest of Adam Nunez. Under these circumstances, the company cannot be faulted for taking steps to reflect the new ownership on its records, necessitating some delay. *Touchet v. Humble Oil & Refining Co.,* 191 F.Supp. 291 (W.D.La.1961); *Broadhead v. Pan American Petroleum Co.,* 166 So.2d 329 (La.App. 3rd Cir. 1964).

■ This situation was complicated by the failure of the company's employee to place the division order sent to Adam G. Nunez on June 15, 1972 in the tickler system. Had this clerical error not oc-

curred, the division order would have been checked as a follow-up, and the failure to make payments discovered. A review of other cases involving similar circumstances indicates that failure to pay through inadvertence or error is generally considered a passive breach. *Wilson v. Sun Oil Co., supra; Alvord v. Sun Oil Co., supra.* Active breach was found to exist only where failure to pay was accompanied by some deliberate element on the part of the lessee.[1]

■■ Further complications resulted from plaintiff's failure to make any inquiry into the situation after his April 6, 1972 letter until after the company had discovered the omission and made efforts to rectify it. One cannot stand by silently and allow himself to be damaged when by his acts or words he could prevent or lessen the damage. *Bonsall v. Humble Oil & Refining Co.*, 201 F.Supp. 516 (W.D.La.1961).

■■ Thus, under the circumstances, we hold that defendant's failure to pay royalties was a passive breach, requiring a formal putting in default as prerequisite to cancellation of the lease. Was there ever such a default notice sent by plaintiff to defendant?

■■ A notice of default requires no particular form, but it must notify the lessee that the lessor regards the lease as breached by non-payment of royalties and the lease terminated. *Wilson v. Sun Oil Co., supra; Brooks v. Neyrey*, 167 So.2d 400 (La.App. 4th Cir. 1964);

*Broadhead v. Pan American Petroleum Corp., supra; Savoy v. Tideland Oil Co.*, 218 F.Supp. 607 (W.D.La.1963), *aff'd* 326 F.2d 757 (5th Cir. 1964). The letter dated March 14, 1974 meets these formal requirements, and, under other circumstances, might be construed to be a default notice. However, it was sent approximately one month after the company discovered and made a good faith effort to cure the breach. At that time the company was not in breach, therefore this letter was not effective notice of default. That leaves for consideration the only other letter which could possibly be construed as a default notice, that of April 6, 1972. A close examination of that letter reveals it to be merely a request that the company take the necessary steps to show Adam G. Nunez as the owner of the interest at issue on its books. Nothing in that letter indicates in any way that plaintiff considered the contract breached and the lease terminated.

Having found the breach to be a passive breach, and that the necessary notice of default was not given, we now find that defendant is entitled to judgment in its favor. There being no genuine issue of material fact, and defendant being entitled to judgment in its favor as a matter of law, the motion by defendant for summary judgment is granted and the motion by plaintiff for summary judgment is denied. Rule 56, *Federal Rules Civil Procedure.* This opinion will serve as a judgment dismissing the claim of plaintiff.

---

1. e. g. *Melancon v. Texas Co., supra* (Non-Payment used as coercion); *Bailey v. Meadows, supra* (callous inattention by lessee to lessor's demands for payment); *Pierce v. Atlantic Refining Co., supra* (where the only excuse was the large number of contracts involved, and repeated demands by plaintiff were not met); *Sellers v. Continental Oil Co., supra* (where lessee was paying co-lessor of plaintiff and evidence showed lessee must have known royalties were also due to plaintiff).