277 F.2d 529
 BUFFALO INSURANCE COMPANY and Southern Indemnity Company, Appellants,
v.
May SPACH, as Receiver, acting as Trustee of the assets of RX Center, Inc., alleged Bankrupt, Appellee.
 No. 17926.
 United States Court of Appeals Fifth Circuit.
 April 22, 1960.
 
 George J. Baya, Miami, Fla., for appellants.
 Gerard Ehrich, Ehrich & Zuckerman, Miami, Fla., for appellee.
 Before TUTTLE, JONES and BROWN, Circuit Judges.
 JONES, Circuit Judge.
 
 
 1
 Each of the appellant insurance companies had insured RX Center, Inc. against loss by fire of the contents usual or incidental to a prescription drug store of the insured located in a place of business in Miami Beach, Florida. Liability was excluded for loss as a result of explosion unless fire ensued and, in that event, only the fire loss was covered. The insured became bankrupt after the events giving rise to this litigation, and May Spach became its receiver. The receiver sued the insurance companies in a state court of Florida alleging a loss to the insured property by fire. The insurance companies removed to the federal district court with diversity of citizenship forming the basis for jurisdiction. The gamut of pleadings began with motions to dismiss and ran the course of motions to stay and for a more definite statement, answers, motions to strike portions of the answers, motion for production of documents, interrogatories, objections to interrogatories, requests for admissions and responses, and a motion to strike all defensive pleadings. These and the entire transcript of an extended pre-trial conference are included in the record. So also, and properly so, is a transcript of the proceedings at the trial. The defendant insurance companies moved for a directed verdict on the ground, among others, that the plaintiff had failed to prove that any of the property insured had been destroyed or damaged by fire. The jury found that there was a loss in the amount of $1500 covered by insurance, and a separate verdict was rendered against each defendant for $750. A verdict for $1,000 for attorneys' fees was rendered against the two defendants jointly and severally. A judgment was entered on the verdicts, a motion for a new trial, or in the alternative, for a judgment non obstante, was made and denied. This appeal followed. The questions presented, perhaps inartfully stated, raise the contentions of the defendants that there is no substantial evidence showing any loss or damage for which the plaintiff was entitled to recover under the policies, that the verdict and judgment for attorneys' fees is excessive, and that the granting of joint and several judgments against the two defendants is improper.
 
 
 2
 The evidence shows that Mrs. Rosenbaum, the pharmacist who operated the drug store and who, it seems, had the predominate ownership interest in it through the corporation, RX Center, was in the store on the morning of July 1, 1957. The only person with her was James G. Collie, who was employed at the store as deliveryman and porter. About ten-thirty o'clock that morning two wall cases containing bottled drug items of various kinds, much of it liquid, fell over and many of the bottles were broken. Mrs. Rosenbaum having died before the trial, Collie was the only person present when the cases fell who was available at the trial. He testified as a witness for the defendants that, "On July 1, 1957, we had some damage there in the store, show cases fell down and what not. I got hit in the head and things of that sort. It was quite an excitable day that we had." He stated that while reading, at Mrs. Rosenbaum's request, a number from one of her certificates which was hanging on the wall, he heard a "faint crack," turned, and saw the cases falling. Two of the cases fell to the floor. Collie soon discovered that he was bleeding and Mrs. Rosenbaum sent him across the street to a doctor. He was back, according to his timing, in about fourteen minutes, and then found members of the fire department operating a blower to remove fumes from the store. He saw no fire or flames. He heard no explosion; only the "faint crack."
 
 
 3
 Mrs. Rosenbaum went into the street and called Henry John Kastner, a Miami Beach policeman. As a witness for the plaintiff he testified that he went into the store with Mrs. Rosenbaum, saw glass all over, and liquid all over the floor. The fumes were strong. He said he saw a small bluish flame that seemed to be up off the floor as though there was a gas rising. He shuffled some liquid back and forth with his foot and the fire went out. He reported to the police department and asked that fire equipment be sent.
 
 
 4
 The fire department received a call at 10:54 A.M. The station was only a block and a half away from the drug store and a prompt response was made by Engine Company No. 4 in charge of Captain Henry F. Morrison. It was Captain Morrison's testimony, given on behalf of the defendants, that upon his arrival there was no fire. He made an examination for evidence of fire and saw none. He specifically stated that he saw no marks of scorch or soot on the walls and no evidence of damage by fire to the cabinets. There were strong fumes, and Captain Morrison had a blower put in the doorway to remove them. He gave non-expert testimony that there are liquids which will ignite fires and other liquids which will extinguish them. Three members of the Fire Department Crew also testified that they did not see any fire or indication that there had been a fire. Captain Fitzpatrick, in charge of the Fire Prevention Bureau of the Fire Department, was called in by Captain Morrison. Captain Fitzpatrick found no evidence that the cabinets were charred or burned. He saw no scorch damage to the walls. He saw fluid on the floor. He soaked rags in the fluid, carried the rags out of the building and found it would not ignite.
 
 
 5
 The witness upon whose testimony the plaintiff's case depends was a public adjuster with a contingent interest in the recovery. His testimony disclosed more of enthusiasm for his client than of a knowledge of facts. On the day of the happenings here related, he was called by Mrs. Rosenbaum. He arrived on the scene about three o'clock in the afternoon. He was emphatic in saying that he saw fire or scorch marks on the wall above the cabinets which had fallen. These were not seen by the firemen and are not shown on photographs introduced in evidence. He testified that there were "tremendous scorch marks on the floor." He stated that the cabinets were burned "all over in general," but on cross-examination he said they were "scorched" and to him "scorched" meant "black marks where a fire had caused smoke or streaks". He could not remember whether the cabinets were burned or scorched on the "back side, top or underneath." Again, he testified, "Under oath I can't say if the side was burnt, the back, the back more than the front. There was just general evidence of fire and if there wasn't, well * * *."
 
 
 6
 The most that can be made of the evidence is that the cabinets fell from an undisclosed cause. There is no evidence of an explosion. The police officer saw the blue flame burning in or above the debris on the floor. Whatever this was that burned was not shown to have had any value at the time it burned. The only other evidence of fire is the "just general evidence of fire" of the public adjuster. This is not enough.
 
 
 7
 We are aware of the provisions of the Seventh Amendment and of the Federal Rules of Civil Procedure, rule 38(a), 28 U.S.C.A., which require the submission to juries of questions of fact in dispute, or questions of conflicting inferences from undisputed facts. However, in the absence of probative facts, supporting with reason, the conclusion expressed in the verdict, the question is one for the court rather than for the jury. Myers v. Reading Co., 331 U.S. 477, 67 S.Ct. 1334, 91 L.Ed. 1615; Reuter v. Eastern Air Lines, 5 Cir., 1955, 226 F.2d 443. In the record before us there is an absence of probative facts supporting the conclusion inherent in the verdict and judgment that there was a loss of or damage to insured property resulting from fire. Judgment, as a matter of law, should have been entered for the defendants and their motions directed toward that end should have been granted. The other questions are not reached. The judgment of the district court will be reversed and judgment will be here rendered for the defendants.
 
 
 8
 Reversed and rendered.