223 So.2d 897 (1969)
Azema LeBlanc HEBERT et al., Plaintiffs-Appellants,
v.
SUN OIL COMPANY et al., Defendants-Appellees.
No. 2722.
Court of Appeal of Louisiana, Third Circuit.
June 12, 1969.
Rehearing Denied July 7, 1969.
*898 Mouton, Beard, Plaisance & Franques, by Caliste Beard, Jr., Lafayette, for plaintiffs-appellants.
Liskow & Lewis, by Austin W. Lewis, New Orleans, for defendants-appellees.
Before SAVOY, CULPEPPER and MILLER, JJ.
SAVOY, Judge.
Mrs. Azema LeBlanc Hebert filed suit to cancel an existing oil, gas and mineral lease on producing property in Lafayette Parish, Louisiana, said lease consisting of 22.86 acres, for non-payment of royalties on certain gas production and certain plant products. Her husband, Eddie J. Hebert, was subsequently made a party plaintiff by order of the district court. Defendants answered contending that no putting in default had occurred and alleging that a clerical error had been made erroneously deleting plaintiffs' tract from a revised unit. They further answered saying that as soon as the non-payment was made known, a check for the five months past due was immediately tendered plaintiffs but was refused. After a trial on the merits, the district judge rejected plaintiffs' demands and dismissed the suit at their costs. Plaintiffs have appealed to this Court.
The parties entered into some twenty-five stipulations, one of which revealed that plaintiffs were entitled to be paid for (1) gas production, (2) distillate, and (3) plant products in three different sands, namely, the Camerina Sand, the Marginulina Sand, and the Miogypsinoides Sand. The stipulations further revealed all three sands were unitized at various months during 1964, but were all revised by Conservation Department Orders effective January 1, 1966.
Additional stipulations entered into between the parties, insofar as pertinent provided, in effect, that:
(1) All royalties due under the terms of the lease were timely paid on all production obtained from the leased premises from date of first production through royalties due on production obtained from said premises to January 1, 1966, the effective date of the revision of the units;
(2) The revision of Miogypsinoides Sand Unit A by Order No. 366-F-2, effective January 1, 1966, reduced the interest of the Azema Hebert tract in unit production from 8.64% to 6.3695%. However, Sunray DX Oil Company continued to pay royalties to plaintiff on the basis of her interest in the original unit for the period from January 1, 1966, to June 1, 1966, resulting in an overpayment to Mrs. Hebert of $37.48 which had not been recouped by defendants;
(3) After receipt on May 18, 1966, of notice of the revision of Miogypsinoides Sand Unit A, the Controllers Department *899 of Sunray DX Oil Company changed its master allocation sheet for the distribution of royalties. The tract number covered by the Azema LeBlanc Hebert lease had been changed from Tract No. 8 to Tract No. 7, and the old Tract No. 7 was deleted; however, the clerk in changing the master allocation sheet deleted Tract No. 8, but did not delete from Tract No. 7 the lease payment number assigned to that tract prior to the revision of the unit, nor did he assign the lease payment number of the deleted Tract No. 8 to the revised Tract No. 7. Thus, payments were made to the original participants in Tract No. 7 instead of the participants in the revised Tract No. 7. As a result payments were made to Harris S. Baudoin totalling $1,093.04 for the production months of July, 1966, through November, 1966, at Baudoin's royalty rate of 1/6th whereas the 1/8th royalty interest of Mrs. Hebert for the same period would have been $819.77, which amount was tendered to her on March 14, 1967, but was refused;
(4) For the period June 1, 1966, through March 1, 1967, plaintiff timely received all royalty payments due her on production from the revised Marginulina 7 Sand Unit A and the revised Camerina Sand Unit A, and on distillate produced from the revised Miogypsinoides Sand Unit A;
(5) By letter dated December 6, 1966, General American Oil Company of Texas advised Sunray DX Oil Company that it questioned the basis for a payment made to it on production of gas from the Miogypsinoides Sand Unit A;
(6) As a result of the letter in (5) above, the clerical error concerning the tract designation was discovered, and the correction of said error resulted in commencement of royalty payments to plaintiff for gas production allocable to Tract 7 of the Miogypsinoides Sand Unit A, but only as to such production obtained from the land during and subsequent to the month of December, 1966;
(7) Prior to March 3, 1967, plaintiffs made no demand upon defendants for payment of royalties nor gave notice that they considered royalty payments to be delinquent. On March 3, 1967, plaintiffs' attorney made written demand to defendants for cancellation of the lease for failure to timely pay royalties;
(8) Royalties attributable to plaintiff on plant products processed from gas production from the units were paid on February 15, 1967, for the period March through September, 1966; on March 17, 1967, for October, 1966; and on April 18, 1967, for the months of November and December, 1966; the total of the three such payments being $13.54.
Counsel for plaintiffs advance two grounds for cancelling the lease. The first ground is that defendant, Sunray, failed to pay royalties to plaintiffs on plant products for a ten-month period. The record reveals that the plant products payment related to a 1/6 leasehold interest held by working interests other than Sunray. The total amount due as royalties on these products for the ten-month period complained of, namely from March through December, 1966, was only $13.54. The record also reveals that Sunray, as operator of the units in the instant case, prior to obtaining from others the necessary information to pay royalties on the products, tendered such royalties on the 1/6 interest to plaintiffs on wet-gas volume. This resulted in an overpayment to plaintiffs as of April 1, 1967, in the sum of $13.61, or a sum exceeding the total products royalties. We are of the opinion that these small sums are not a serious basis for cancelling the lease, particularly in view of the overpayment.
The next contention advanced by counsel for plaintiffs, in praying that the lease be cancelled, is their argument that Article 2710 of the Louisiana Civil Code binds the lessee to pay the rent at the terms agreed on, and that under the lease, settlement was to be made monthly for the amount due. They also rely upon the cases of Bollinger v. Texas Company, 232 La. 637, *900 95 So.2d 132; Bailey v. Meadows, 130 So. 2d 501 (La.App. 2 Cir. 1961); Pierce v. Atlantic Refining Company, 140 So.2d 19 (La.App. 3 Cir. 1962); and Sellers v. Continental Oil Company, 168 So.2d 435 (La.App. 3 Cir. 1964).
None of the cases cited by plaintiffs are apposite.
In the Bollinger case, supra, the defendant did not pay production royalties for some time in hopes of attaining an amendment to plaintiff's lease stipulating larger units which was resisted by plaintiff, and although shut in royalties were paid in an amount in excess of any production royalties, the court allowed cancellation because of the continuing refusal of defendant to pay production royalties.
In the Bailey case, supra, the court refused to accept an excuse that defendants' failure to pay production royalties for almost two years was because of negotiations solely for the benefit of and between defendants and the operator of the unit.
In Pierce, supra, the court found an active breach of the lease for a refusal to pay royalties and was unimpressed with the defendants' reasons for not timely paying the accrued royalties and allowed cancellation.
In Sellers, supra, the court cancelled a mineral lease for non-payment of production royalties for some 33 months as the defendant could offer no plausible explanation for non-payment.
After reviewing the record in its entirety, we feel the defendants have adequately justified non-payment of royalties for the five-month period because of a clerical error, and accordingly, there can be no cancellation of the lease under the facts herein presented. The stipulations entered into by the parties show that when the revised unit was finished in January of 1966, plaintiffs' tract was inadvertently omitted as to the gas production royalties in the Miogypsinoides Sand Unit A, and for a five-month period no payments in this area alone were made to plaintiffs. Also, the stipulations reveal that payments were made in error over and above any amounts due plaintiff to Harris Baudoin on the basis of his 1/6th royalty interest rather than plaintiffs' 1/8th royalty interest. On March 14, 1967, defendants tendered the full amount owed to plaintiffs for the five-month period which had been omitted.
Sunray DX Oil Company has merged with Sun Oil Company, and Sun Oil has emerged as the parent company. Counsel for Sunray has filed a motion to substitute Sun Oil Company for Sunray. The motion was granted. Accordingly, Sun Oil Company is substituted as a party defendant in this suit in the place of Sunray DX Oil Company.
For the reasons assigned the judgment appealed from is affirmed at appellants' costs.
Affirmed.

On Application for Rehearing.
En Banc. Rehearing denied.