Adam G. NUNEZ, Plaintiff-Appellant,

v.

The SUPERIOR OIL COMPANY, Defendant-Appellee.

No. 76–3340.

United States Court of Appeals, Fifth Circuit.

May 12, 1978.

Adam G. Nunez, pro se.

Robert T. Jorden, Lafayette, La., Lawrence P. Simon, Jr., Willard B. Wagner, Jr., James M. Dunnam, Houston, Tex., for defendant-appellee.

Before, HILL, RUBIN and VANCE, Circuit Judges.

ALVIN B. RUBIN, Circuit Judge:

This suit to cancel mineral leases and to obtain damages incurred as a result of their alleged breach was commenced in Louisiana state court, and removed by the defendant, Superior Oil Company,[1] to federal court on the basis of diversity of citizenship. After a careful consideration of Louisiana law, the experienced trial judge rendered a summary judgment for the defendant. While we conclude that the trial court was correct in its analysis of Louisiana law, we reverse the summary judgment and remand because the plaintiff is entitled to a jury trial of a controlling issue.[2]

I.

The objective facts are not in dispute.[3] Adam Nunez and his son, Adam G. Nunez, each owned an undivided one-fourth interest in a piece of property leased to Superior for mineral development. On May 2, 1971, the father died and the son began endorsing his father's royalty checks, with the added notation "by Adam G. Nunez, Administrator, for deposit only to the Estate of Adam Nunez." Over six months later, on October 21, 1971, K. R. Richardson, a senior clerk at Superior, discovered that the endorsement was executed in a representative capacity, and ordered royalty payments to the father stopped. He wrote the son, who is a lawyer, and asked for various documents relating to the father's succession. These documents were supplied, and the company's attorney approved further payments to the administrator of the succession.

Whenever there is any change in the division of the royalty from a lease, it is Superior's policy, in accordance with industry custom, to send an agreement to the royalty owners stating how the royalty is to be divided, and to ask them to sign it. The company recognizes that it is not necessary in many cases that a division order be exe-

---

1. The occasional reference to "Sun Oil" in the opinion below, 406 F.Supp. 261, 262, apparently is inadvertent.

2. The plaintiff's appeal raised the issue of whether the court properly applied Louisiana jurisprudence in concluding that Superior was entitled to summary judgment. While enough was said about the decisive issue to prevent its preclusion as a matter not properly raised, see Martinez v. Mathews, 5 Cir. 1976, 544 F.2d 1233, 1237, the plaintiff had apparently not fully presented it in the trial court, and it was not adequately briefed or argued on appeal until questions from the court at oral argument prompted supplemental briefs. Delay, litigation expense, fulminatory briefs, and unnecessary labor on the part of counsel and the court could all likely have been avoided had the lawyer-plaintiff properly addressed first things first. These are mentioned only to make clear our recognition that the busy trial court did not have the assistance that counsel should have provided. While we reverse, the true error does not lie with the court.

We note, too, that the trial judge did what a Louisiana trial judge likely would have done: decide the case. The plaintiff's demand for jury trial, however, barred the usual course.

3. The plaintiff calls attention to certain disputes about facts but none of these appears at this stage to be genuinely material to decision of the issue presented.

cuted; it was not considered necessary in this case, but it nonetheless follows the practice of mailing a division order in the hope that the lessees will sign it and thus ratify the proposed new apportionment of royalty. Adam G. Nunez stated at oral argument that he never signs division orders; he sees no advantage to him, as a lessor, in doing so and the company has no right to require it. Accordingly, Superior followed its procedure and sent a royalty division order to Adam G. Nunez, as administrator of his father's succession, but he neither signed it nor returned it to the company.

On April 6, 1972, Adam G. Nunez sent Superior a copy of a judgment of possession recognizing him as the sole heir of all his father's property, including the royalty interest, and a letter requesting that payments of his father's interest be made to him. On June 15, 1972, the company sent him a second royalty division order; this too was neither signed nor returned.

When the company mails a division order, it usually places a copy in its tickler system to remind its employees to check within 30 to 60 days to ensure that royalty payments are resumed even if the division order has not been returned. On this occasion, through oversight, the copy was not placed in the reminder system. Because of this failure, none of the company's employees became conscious of the fact that the division order had not been returned and that payments had not been resumed. The error was discovered during an internal audit on February 20, 1974; as a result, the company sent Nunez the unpaid royalties with interest computed at the rate of seven percent per annum. On March 14, 1974, he sent the company a letter demanding acknowledgement of cancellation of the lease. Following the company's refusal to oblige, this suit was filed. After the case was removed to federal court, the plaintiff demanded a jury trial.

## II.

Under Louisiana law, the lessee's failure to pay production royalties for an *appreciable length of time without justification* amounts to an active breach which terminates the lease. *Wilson v. Sun Oil Co.*, La.1974, 290 So.2d 844; *Bollinger v. Texas Co.*, 1957, 232 La. 637, 95 So.2d 132; *Melancon v. Texas Co.*, 1956, 230 La. 593, 89 So.2d 135; *Alvord v. Sun Oil Co.*, La.App.1972, 271 So.2d 561; *Sellers v. Continental Oil Co.*, La.App.1964, 168 So.2d 435, aff'd, La. App.1966, 188 So.2d 466; *Pierce v. Atlantic Refining Co.*, La.App.1962, 140 So.2d 19; *Bailey v. Meadows*, La.App.1961, 130 So.2d 501. However, if the delay in payment was *"justified,"* the failure to pay promptly is only a passive breach, and the lessor must accord the lessee a chance to remedy the violation.[4] *Hibbert v. Mudd*, La.1974, 294 So.2d 518; *Alvord v. Sun Oil Co., supra; Hebert v. Sun Oil Co.*, La.App.1969, 223 So.2d 897; *Broadhead v. Pan American Petroleum Corp.*, La.App.1964, 166 So.2d 329; *Fawvor v. U. S. Oil of La., Inc.*, La.App. 1964, 162 So.2d 602.

The principle just stated includes two general terms that require further amplification: what length of time is appreciable, and, under what circumstances is a breach justifiable. The Louisiana cases indicated that each issue must be considered in the context of the unique facts and circumstances of the case in which it arises. *Fawvor, supra.* Because Superior concedes that its delay was appreciable, we focus on justifiability. Delay has been considered "justifiable" when the lessor shows that it is due to "adequate reason," *Fontenot v. Sunray Mid-Continent Oil Co.*, La.App.1967, 197 So.2d 715, or "inadvertence" and "clerical error" in the context of otherwise reasonable conduct. *Alvord, supra; Hebert, supra.* These terms provide semantic amplification

---

**4.** This is called "putting in default." LSA–C.C. art. 1911. *Savoy v. Tidewater Oil Co.*, W.D.La. 1963, 218 F.Supp. 607, 610, aff'd, 5 Cir. 1964, 326 F.2d 757; *Wilson v. Sun Oil Co., supra; Brooks v. Neyrey*, La.App.1964, 167 So.2d 400; *Broadhead v. Pan American Petroleum Corp.,*

*supra.* There is no sacrosanct form, but the notice must be sufficient to advise the lessee that the lessor considers the lease breached by the non-payment, and that it is terminated unless the default is promptly remedied.

but insufficient definition for drawing precise lines. Discriminating judgment is required before their conceptual significance yields a decision.

The trial court granted summary judgment on the basis that the delay was attributable to, and "justified" by, the administrative procedures designed to reflect the change in ownership and the subsequent inadvertent error in filing; hence, the delay constituted only a passive breach. The court also concluded that the letter of April 6, 1972 did not constitute a demand or "putting in default" because it did not put the defendant on notice that the plaintiff considered the lease terminated. Because Superior had not been put in default for the passive breach, the plaintiff was not entitled to cancellation.

There can be little doubt that the trial court's factual conclusions were not clearly erroneous; the question is whether the court was correct in rendering summary judgment determining that Superior's delay was justifiable, or whether that issue required resolution by a jury.

### III.

■ Our appraisal must follow the commandment that summary judgment is appropriate only when no material issues of *fact* are in dispute. *A. M. R. Enterprises, Inc. v. United Postal Savings Assoc.,* 5 Cir. 1978, 567 F.2d 1277, 1279; *Ralli-Coney v. Gates,* 5 Cir. 1976, 528 F.2d 572, 574; *Greenberg v. General Mills Fun Group, Inc.,* 5 Cir. 1973, 478 F.2d 254, 256.[5] Summary judgment, we have frequently reminded, is not only an instrument of "just, speedy and inexpensive" resolution, *Albatross Shipping Corp. v. Stewart,* 5 Cir. 1964, 326 F.2d 208, but also a "lethal weapon" capable of "overkill," *Brunswick v. Vineberg,* 5 Cir. 1967, 370 F.2d 605, 612. *See Bruce v. Travelers Insurance Co.,* 5 Cir. 1959, 266 F.2d 781, 786, where Judge Wisdom documents this

court's expressions of favor and admonitions of caution. *See generally* Louis, Federal Summary Judgment Doctrine: A Critical Analysis, 83 Yale L.Rev. 745 (1974); Bauman, The Evolution of Summary Judgment Procedure, 31 Ind.L.J. 329 (1956).

■ There is no litmus that infallibly distinguishes those issues that are "factual" from those that are "legal" or "mixed." When all those material facts susceptible of objective determination are known, there may be inferences or conclusions to be drawn from them. Many observations that may appear superficially to be factual are the result of inference, viewpoint, and judgment. At ends of the spectrum, it may be relatively easy to separate fact and law, but, as we approach the point where facts and the application of legal rule to them blend, appraising evidentiary facts in terms of their legal consequences and "applying" law to fact become inseparable processes. In some instances where facts may assume infinite variety, legal rules are deliberately stated in a fashion calling for the application of judgment. Thus, in a suit for personal injury from an automobile accident, it might be ascertained, or even stipulated, that the defendant was driving at 50 miles per hour on a certain road at 6:00 p. m. on a rainy January day. The trier of fact must still decide whether this is "negligence." Therefore, the availability of summary judgment depends upon more than an abstract denomination of disputed material issues as "factual" or "legal" or "mixed;" it may turn on whether the application of legal criteria necessarily require judgmental evaluation by the trier of fact, or, to put it another way, whether the trial will require a judge/jury separation of issues.

■ If decision is to be reached by the court, and there are no issues of witness credibility, the court may conclude on the basis of the affidavits, depositions, and stipulations before it, that there are no genuine

---

5. The standard to be applied is, of course, a federal one. *Hanna v. Plumer,* 1965, 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8. For the comparable standards under Louisiana law, *see Jefferson Parish School Board v. Rowley Co., Inc.,* La.App.1974, 305 So.2d 658; *Moreaux v. American Mutual Ins. Co.,* La.App.1974, 302 So.2d 686; *Lachney v. Employers Cas. Co.,* La.App. 1973, 281 So.2d 761; *Chisholm v. Stevens,* La. App.1970, 231 So.2d 640.

issues of material fact, even though decision may depend on inferences to be drawn from what has been incontrovertibly proved. Under those circumstances, which may be rare, the judge who is also the trier of fact may be warranted in concluding that there was or was not negligence, or that someone acted reasonably or unreasonably, or, as is the case here, that delay under the circumstances proved is justified or unjustified, even if that conclusion is deemed "factual" or involves a "mixed question of fact and law." A trial on the merits would reveal no additional data. Hearing and viewing the witnesses subject to cross-examination would not aid the determination if there are neither issues of credibility nor controversies with respect to the substance of the proposed testimony. The judge, as trier of fact, is in a position to and ought to draw his inferences without resort to the expense of trial. Compare *Avondale Shipyards, Inc. v. Vessel Thomas E. Cuffe*, E.D.La., 1977, 434 F.Supp. 920, 932 *with United Rubber, Cork, Etc., Workers v. Lee Nat'l Corp.*, S.D. N.Y.1971, 323 F.Supp. 1181, 1187.

But, where a jury is called for, the litigants are entitled to have the jury draw those inferences or conclusions that are appropriate grist for juries. Summary judgment "was not intended to . . . deprive a litigant of, or at all encroach upon, his right to a jury trial. Judges in giving its flexible provisions effect must do so with this essential limitation constantly in mind." *Whitaker v. Coleman*, 5 Cir. 1940, 115 F.2d 305, 306. *See also Cameron v. Vancouver Plywood Corp.*, 9 Cir. 1959, 266 F.2d 535, 540; *Port of Palm Beach Dist. v. Goethals*, 5 Cir. 1939, 104 F.2d 706, 709. *Cf. United States v. J. B. Williams Co., Inc.*, 2 Cir. 1974, 498 F.2d 414, 430, note 19.

■ Juries must consider not only "questions of fact in dispute, [but] questions of conflicting inferences from undisputed

facts." *Buffalo Insurance Co. v. Spach*, 5 Cir. 1960, 277 F.2d 529, 531. "Evidentiary facts, though undisputed, do not always conclusively establish the ultimate fact at issue. When the ultimate fact is to be inferred from evidentiary facts, the choice between permissible inferences is for the trier of facts." *Walker v. U. S. Gypsum Co.*, 5 Cir. 1959, 270 F.2d 857, 862, *cert. denied*, 1960, 363 U.S. 805, 80 S.Ct. 1240, 4 L.Ed.2d 1148. Of course, if there is "a *complete absence* of probative facts" to support a particular inference, *Planters Manufacturing Co. v. Protection Mut. Ins. Co.*, 5 Cir. 1967, 380 F.2d 869, 874, *cert. denied*, 1967, 389 U.S. 930, 88 S.Ct. 293, 19 L.Ed.2d 282 (emphasis original), or, if "the facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at [but one] verdict," *Boeing v. Shipman*, 5 Cir. 1969, 411 F.2d 365, 374, the court may bypass the jury.

■ Thus, where, as here, the evidentiary facts are not disputed, a court in a non-jury case may grant summary judgment if trial would not enhance its ability to draw inferences and conclusions. But summary judgment is not appropriate if the same case is to be tried to a jury, and the inferences and conclusions to be drawn are genuinely disputed. To put it in another fashion, whether disputed issues are issues of "fact" for purposes of Rule 56 depends not only on the state of the evidence and the nature of the issue but hinges also on whether the litigants have a right to a jury determination. Whether summary judgment was appropriate here depends, therefore, upon whether the plaintiff was entitled to a jury trial, and, also, whether the determination with respect to justification for the delay in paying royalties is a decision that must be made by the jury rather than the court.[6] These questions are in-

---

6. Whether the issue is to be decided by a jury or by the court will also affect the standards governing appellate review. Where a jury has tried an issue upon correct instructions, the only inquiry is whether there was sufficient evidence to sustain the findings. *See Security Mut. Cas. Co. v. Affiliated FM Ins. Co.*, 8 Cir.

1972, 471 F.2d 238, 245; *Kelly v. Shamrock Oil & Gas Corp.*, 5 Cir. 1948, 171 F.2d 909, 911, *cert. denied*, 1949, 337 U.S. 917, 69 S.Ct. 1159, 93 L.Ed. 1727. If the issue is tried to the court, we must determine whether its findings were clearly erroneous. Rule 52, F.R.Civ.Proc. *See Commissioner of Internal Revenue v. Duber-*

terrelated, and it is helpful to discuss the second one first.

## IV.

Louisiana courts have considered the justifiability of a delay in royalty payments to be an issue of fact. *See, e. g., Mecom v. Mobil Oil Corp.*, La.App.1974, 299 So.2d 380, writ refused, La.1974, 302 So.2d 308; *Bouterie v. Kleinpeter*, La.App.1973, 289 So.2d 163.[7]

However, although the substantive issues are governed by state law pursuant to *Erie*,[8] federal law governs the allocation of issues raised between judge and jury. "It cannot be gainsaid that there is a strong federal policy against allowing state rules to disrupt the judge-jury relationship in the federal courts." *Byrd v. Blue Ridge Rural Electric Cooperative*, 1958, 356 U.S. 525, 538, 78 S.Ct. 893, 901, 2 L.Ed.2d 953; *Simler v. Conner*, 1963, 372 U.S. 221, 222, 83

S.Ct. 609, 610; 9 L.Ed.2d 691; *see generally* Smith, Blue Ridge and Beyond: A Bird's-Eye View of Federalism in Diversity Litigation, 36 Tul.L.Rev. 443 (1962). Hence, where federal rules would entitle litigants to a jury determination of a particular issue, the court will not yield to a state practice to the contrary. *Byrd, id.; Magenau v. Aetna Freight Lines, Inc.*, 1959, 360 U.S. 273, 278, 79 S.Ct. 1184, 1188, 3 L.Ed.2d 1224. Likewise, characterization of state-created claims as equitable or legal for purposes of determining whether a right to jury trial exists[9] and determination of when the evidence warrants a directed verdict[10] or is sufficient to require submission to a jury[11] are questions governed by federal law.

The categories of "questions of law" and "questions of fact" have been the traditional touchstones by which federal courts have purported to allocate decision-making between judge and jury.[12] *Dimick v. Schiedt,*

stein, 1960, 363 U.S. 278, 290–291, 80 S.Ct. 1190, 1199–1200, 41 L.Ed.2d 1218; 5A Moore's Federal Practice, ¶ 52.03[1], at 2615 (2d ed. 1977).

7. The issue of whether violation of an implied obligation to protect from drainage is an active or passive breach is for the court rather than the jury. *Williams v. Humble Oil & Refining Co.*, 5 Cir. 1970, 432 F.2d 165, 181, rehearing denied, 435 F.2d 772, *cert. denied*, 1971, 402 U.S. 934, 91 S.Ct. 1526, 28 L.Ed.2d 868. It is not apparent whether the court in *Williams* characterized the issue as one for the court because a Louisiana court would so characterize it or because that classification "would seem to be the better view." 432 F.2d at 181. For reasons indicated, whether Louisiana courts would submit the issue to a jury is not determinative of whether a federal court should do so.

8. *Erie R. Co. v. Tompkins*, 1938, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188.

9. *Simler v. Conner*, 1963, 372 U.S. 221, 222, 83 S.Ct. 609, 611, 9 L.Ed.2d 691; *United States v. Williams*, 5 Cir. 1971, 441 F.2d 637, 643.

10. *Herron v. Southern Pac. Co.*, 1931, 283 U.S. 91, 51 S.Ct. 383, 75 L.Ed. 857; *Transammonia Export Corp. v. Conserv., Inc.*, 5 Cir. 1977, 554 F.2d 719; *but see Wilson v. Nooter Corp.*, 1 Cir. 1973, 475 F.2d 497, 501–502, aff'd, 1974, 499 F.2d 705, *cert. denied*, 1973, 414 U.S. 865, 94 S.Ct. 116, 38 L.Ed.2d 85; Cooper, Directions for Directed Verdicts: A Compass for Federal Courts, 55 Minn.L.Rev. 903, 972–990.

11. *Midland Ins. Co. v. Markel Service, Inc.*, 5 Cir. 1977, 548 F.2d 603, 606, *Dresco Mechanical Contractors, Inc. v. Todd-Cea*, 5 Cir. 1976, 531 F.2d 1292, 1297, note 2; *Gray v. Martindale Lumber Co.*, 5 Cir. 1975, 515 F.2d 1218, 1221, modified on other grounds, 1976, 527 F.2d 1352; *Boeing Co. v. Shipman*, 5 Cir. 1969, 411 F.2d 365, 368; *Planters Manufacturing Co. v. Protection Mut. Ins. Co.*, 5 Cir. 1967, 380 F.2d 869, *cert. denied*, 1967, 389 U.S. 930, 88 S.Ct. 293, 19 L.Ed.2d 282; *Prudential Insurance Co. of America v. Schreffler*, 5 Cir. 1967, 376 F.2d 397, *cert. denied*, 1967, 389 U.S. 1005, 88 S.Ct. 564, 19 L.Ed.2d 601; *ABC–Paramount Records, Inc. v. Topps Record Distributing Co., Inc.*, 5 Cir. 1967, 374 F.2d 455; *Melton v. Greyhound Corp.*, 5 Cir. 1965, 354 F.2d 970; *Shirey v. Louisville & N. R. R. Co.*, 5 Cir. 1964, 327 F.2d 549, 552; *Kirby Lumber Corp. v. White*, 5 Cir. 1961, 288 F.2d 566; *Rutherford v. Illinois Cent. R. R. Co.*, 5 Cir. 1960, 276 F.2d 330, 333, 340–341, *cert. denied*, 1960, 364 U.S. 922, 81 S.Ct. 288, 5 L.Ed.2d 261; *Revlon, Inc. v. Buchanan*, 5 Cir. 1959, 271 F.2d 795, 800; *Pogue v. Great Atlantic & Pacific Tea Co.*, 5 Cir. 1957, 242 F.2d 575, 582; *Reuter v. Eastern Air Lines*, 5 Cir. 1955, 226 F.2d 443, 445.

12. The distinction has been traced to the middle of the sixteenth century. Farley, Instructions to Juries—Their Role in the Judicial Process, 42 Yale L.J. 194, 198–199 (1932), referring to *Townsend's Case*, 1 Plowden 111, 114, 75 Eng.Rep. 173, 178–179 (K.B. 1554). However, the dichotomy has never been a constant one.

1935, 293 U.S. 474, 486, 55 S.Ct. 296, 301, 79 L.Ed. 603; Weiner, The Civil Jury Trial and the Law-Fact Distinction, 54 Cal.L.Rev. 1867 (1966); Green, Judge and Jury 279 (1930). Yet the courts and commentators alike concede that this dichotomy is not helpful with respect to the many issues that represent "mixed issues of law and fact." *See Artvale, Inc. v. Rugby Fabrics Corp.*, 2 Cir. 1966, 363 F.2d 1002, 1005; Weiner, *supra*, 54 Cal.L.Rev. at 1876; James, Civil Procedure, § 7.10, 270–271 (1965), 5A Moore's Federal Practice, § 52.05[1] (1977). *See also* Traynor, J., dissenting in *Loper v. Morrison*, 1944, 23 Cal.2d 600, 611–612, 145 P.2d 1, 6–7.

▬ Whether the inference is one for the court or one for the jury depends ultimately upon which decision-maker can best resolve the issue. *See United States v. J. B. Williams Co., Inc., supra*, 498 F.2d at 431 (Friendly, J.), ("what a court can determine better than a jury, [is] perhaps about the only satisfactory criterion for distinguishing 'law' from 'fact.' "). *See also* Weiner, *supra*, at 1873.

If the inference to be drawn requires "experience with the mainsprings of human conduct" and reference to "the data of practical human experience," [13] *Commissioner of Internal Revenue v. Duberstein*, 1960, 363 U.S. 278, 289, 80 S.Ct. 1190, 1198, 41 L.Ed.2d 1218, we entrust the jury with that determination. "Where . . . not only the facts constituting the conduct of the parties, but also the standard of care which they should have exercised, are to be

determined, the case is entirely one of fact and to be decided by the jury and not one of law for the court." *Bryant v. Hall*, 5 Cir. 1956, 238 F.2d 783, 787. *See also Sioux City & Pac. R. R. v. Stout*, 1873, 84 U.S. (17 Wall.) 657, 21 L.Ed. 745; 2 Harper & James, The Law of Tort, § 15.3, at 880–81. Hence, juries determine issues of negligence, *Dawson v. Contractors Transport Corp.*, 1972, 151 U.S.App.D.C. 401, 414–415, 467 F.2d 727, 740–741; foreseeability, *Anderson v. Nosser*, 5 Cir. 1972, 456 F.2d 835, 841, *cert. denied*, 1972, 409 U.S. 848, 93 S.Ct. 53, 34 L.Ed.2d 89; whether "just cause" exists, *Lowe v. Pate Stevedoring Co.*, 5 Cir. 1977, 558 F.2d 769, 772; whether a product is "unreasonably dangerous for normal use," *Simien v. S. S. Kresge Co.*, 5 Cir. 1978, 566 F.2d 551; whether a fiduciary duty was breached, *De Pinto v. Provident Sec. Life Ins. Co.*, 9 Cir. 1963, 323 F.2d 826, 837, *cert. denied sub nom.*, 376 U.S. 950, 84 S.Ct. 965, 11 L.Ed.2d 969 and 376 U.S. 950, 84 S.Ct. 968, 11 L.Ed.2d 970; and, issues turning on motive, purpose, design or intent, *United States v. Edwards*, 5 Cir. 1964, 333 F.2d 575, 578.

Apart from nature of the issue, the courts have suggested that, if reasonable persons can draw conflicting inferences from otherwise undisputed facts, the collective wisdom of the jury ought be relied upon.[14] "Where uncertainty arises either from a conflict of testimony or because the facts being undisputed, fair-minded men may honestly draw different conclusions from them, the question is not one of law, but of fact to be

See Note, The Changing Role of the Jury in the Nineteenth Century, 74 Yale L.J. 170 (1964).

**13.** Although the court in *Duberstein* was concerned with the appropriate standard for appellate review, rather than with the allocation of decision-making between judge and jury, its analysis is equally applicable to both questions. *See also Bogardus v. Commissioner of Internal Revenue*, 1937, 302 U.S. 34, 39, 58 S.Ct. 61, 64, 82 L.Ed. 32; *Dobson v. Commissioner of Internal Revenue*, 1943, 320 U.S. 489, 498, note 22, 64 S.Ct. 239, 245, 88 L.Ed. 248.

**14.** As Justice Holmes eloquently stated,
When a case arises in which the standard of conduct, pure and simple, is submitted to

the jury, the explanation is plain. It is that the court, not entertaining any clear views of public policy applicable to the matter, derives the rule to be applied from daily experience, as it has been agreed that the great body of the law of tort has been derived. But the court further feels that it is not itself possessed of sufficient practical experience to lay down the rule intelligently. It conceives that twelve men taken from the practical part of the community can aid its judgment. Therefore it aids its conscience by taking the opinion of the jury.

Holmes, The Common Law, 123–124 (1881) (footnote omitted).

settled by the jury." *Best v. District of Columbia,* 1934, 291 U.S. 411, 415, 54 S.Ct. 487, 489, 78 L.Ed. 882; *see also Lowe v. Pate Stevedoring Co., supra* ; *Callon Petroleum Co. v. Big Chief Drilling Co.,* 5 Cir. 1977, 548 F.2d 1174, 1180; *Dobson v. Masonite Corp.,* 5 Cir. 1966, 359 F.2d 921, 923; *Buffalo Ins. Co. v. Spach, supra,* 277 F.2d at 531; *Walker v. U. S. Gypsum Co., supra,* 270 F.2d at 862; *but see Corollo v. S. S. Kresge Co.,* 4 Cir. 1972, 456 F.2d 306, *cert. denied,* 1972, 407 U.S. 911, 92 S.Ct. 2440, 32 L.Ed.2d 686.

Whether the delay in payments was "justified" by the clerical error depends in large measure upon whether Superior acted reasonably under the circumstances. *See Alvord v. Sun Oil Co., supra* ; *Hebert v. Sun Oil Co., supra.* It requires the determination of whether a particular standard defined by the Louisiana jurisprudence and differing perhaps only in degree from such other general standards as negligence, foreseeability, reasonableness or just cause, was violated or maintained. Hence, it involves a determination that either party would be entitled to have submitted to a jury,[15] if he is otherwise entitled to a jury trial.

## V.

An action to cancel a mineral lease is equitable in nature. *Kerr-McGee Corp. v. Bokum Corp.,* 10 Cir. 1972, 453 F.2d 1067, 1071–1072; *see also American Life Ins. Co. v. Stewart,* 1937, 300 U.S. 203, 57 S.Ct. 377, 8 L.Ed. 605; *Liberty Mutual Ins. Co. v. Gerald,* 5 Cir. 1948, 170 F.2d 917; 5 Moore's Federal Practice, ¶ 38.23 (2d ed. 1977); *but see Logan v. Holman,* D.N.J.1947, 7 F.R.D. 596.

However, in addition to cancellation of the lease, plaintiff seeks damages sustained as a result of the alleged breach. These include the value of the entire production attributable to the Nunez interest from the date of breach, estimated at $103,712.28, interest on that sum, and, presumably in the alternative, alleged losses suffered due to the increased income tax liability resulting from receipt of the royalties in a lump sum.

Where "equitable and legal claims are joined in the same action, there is a right to jury trial on the legal claims which must not be infringed either by trying the legal issues as incidental to the equitable ones or by a court trial of a common issue existing between the claims." *Ross v. Bernard,* 1970, 396 U.S. 531, 537–538, 90 S.Ct. 733, 738, 24 L.Ed.2d 729; *see also Dairy Queen, Inc. v. Wood,* 1962, 369 U.S. 469, 82 S.Ct. 894, 8 L.Ed.2d 44; *Beacon Theaters, Inc. v. Westover,* 1959, 359 U.S. 500, 79 S.Ct. 948, 3 L.Ed.2d 988. "*Beacon* and *Dairy Queen* have mandated that once any claim for money damages is made, the legal issue— whether defendant breached a duty owed plaintiff for which defendant is liable in damages—must be tried to a jury whether or not there exists an equitable claim to which the damage claim might once have been considered 'incidental.' " *Rogers v. Loether,* 7 Cir. 1972, 467 F.2d 1110, 1120, *aff'd sub nom., Curtis v. Loether,* 1974, 415 U.S. 189, 94 S.Ct. 1005, 39 L.Ed.2d 260. *See United States v. McMahan,* 5 Cir. 1978, 569 F.2d 899 (*en banc*).

The justification for the failure to pay royalties must be determined with respect to both the legal and equitable claims. Although the claim for damages cannot succeed unless the lease is cancelled, extenuation is an issue common to both. We do not find "imperative circumstances" that would justify the court in deciding the common issue with respect to the equitable aspect of the case, thus denying a jury trial of that issue. *Dairy Queen, supra,* 369 U.S. at 472–473, 82 S.Ct. at 897; *Beacon Theaters, supra,* 359 U.S. at 510–511, 79 S.Ct. at 957;

---

15. The issue of whether the April 1972 letter constituted a "putting in default" or demand under Louisiana law was properly determined by the court, for it not only involves construction of a clear and unambiguous written statement; *compare Pletz v. Christian Herald Ass'n, Inc.,* 5 Cir. 1973, 486 F.2d 94; *United States v. Taylor,* 5 Cir. 1961, 293 F.2d 717, *with Dobson v. Masonite Corp.,* 5 Cir. 1966, 359 F.2d 921, but a peculiarly technical criterion that is seldom utilized in evaluating human conduct.

*United States v. McMahan, supra,* 569 F.2d at 892; *Eli Lilly & Co., Inc. v. Generix Drug Sales, Inc.,* 5 Cir. 1972, 460 F.2d 1096, 1107; *see also Dawson v. Contractors Transport Corp.,* 1972, 151 U.S.App.D.C. 401, 467 F.2d 727; *Robine v. Ryan,* 2 Cir. 1962, 310 F.2d 797; *Thermo-Stitch, Inc. v. Chemi-Cord Processing Corp.,* 5 Cir. 1961, 294 F.2d 486. Hence, federal law [16] accords a right to jury trial that was denied by the summary judgment.

Accordingly, the order of the trial court granting summary judgment is REVERSED, and this case is REMANDED for further proceedings consistent with this opinion.

**16.** Where federal law accords the right to jury trial in a diversity case, that right will be respected notwithstanding contrary state law. *Byrd v. Blue Ridge Rural Electric Cooperative,* 1958, 356 U.S. 525, 78 S.Ct. 893, 2 L.Ed.2d 953. It is not necessary to consider whether such a right would be accorded where state law provides for a jury trial, as Louisiana does with respect to many equitable claims, including claims for cancellation, *see* LSA–C.C.P. art. 1731, *et seq.,* but federal law does not. *Compare* Whicher, Erie Doctrine and the Seventh Amendment: A Suggested Resolution of Their Conflict, 37 Tex.L.Rev. 549, 560–563 (1959), *with* 9 Wright & Miller, Federal Practice and Procedure: Civil § 2303 (1971); 5 Moore's Federal Practice, ⸿ 38.08(6) (1977); *and* Miller, Federal Rule 44.1 and the "Fact" Approach to Determining Foreign Law: Death Knell for a Die-Hard Doctrine, 65 Mich.L.Rev. 615, 719 (1967). Nor need we consider whether, in that event, Louisiana's distinctive jury trial, *see* Robertson, The Precedent Value of Conclusions of Fact in Civil Cases in England and Louisiana, 29 La.L.Rev. 78 (1968), would be fairly effectuated by providing the federal mode of jury trial. *See Herron v. Southern Pac. Co.,* 1931, 283 U.S. 91, 51 S.Ct. 383, 75 L.Ed. 857. *See also* Whicher, *supra,* 37 Tex.L.Rev. at 557, note 43.