**Evelyn HIGGINS et al.**

v.

**Cleveland FUESSENICH, Individually and as Commissioner of the Connecticut State Police, et al.**

**Civ. No. H–209.**

United States District Court,
D. Connecticut.

June 21, 1978.

David N. Rosen, Rosen & Dolan, New Haven, Conn., for plaintiffs.

Edward J. Foley, Gordon, Muir & Foley, Jon S. Berk, Chester J. Bukowski, Jr., Hartford, Conn., for defendants.

## RULING ON CROSS–MOTIONS FOR PARTIAL SUMMARY JUDGMENT

BLUMENFELD, District Judge.

The plaintiffs in the present action are persons whose conversations were intercepted by the Connecticut State Police during authorized electronic surveillance of a private telephone. . Pursuant to a judicial order, the state police intercepted all calls over a particular telephone for a period of ten days. Plaintiffs contend that this action deprived them of rights secured by the fourth amendment, and violated provisions of federal and state statutes that regulate electronic surveillance.

Plaintiffs bring the present action under 42 U.S.C. § 1983 and 18 U.S.C. § 2520. Jurisdiction is conferred by 28 U.S.C. §§ 1343(3) and 1343(4). Plaintiffs' additional claim under Connecticut General Statutes § 54–41r is cognizable pursuant to this court's pendent jurisdiction.

This case involves the question whether the state police violated a requirement of federal and state statutes that electronic surveillance "be conducted in such a way as to minimize the interception of communications not otherwise subject to interception under this chapter . . . ." 18 U.S.C. § 2518(5); Conn.Gen.Stats. § 54–41e. Both plaintiffs and defendants move for partial summary judgment on the minimization issue. Each contends that the undisputed facts establish as a matter of law whether there has been a transgression of federal or state statute. Therefore, they urge that the question be resolved on summary judgment. Rule 56, Fed.R.Civ.P.

Plaintiffs contend that during this surveillance some 98 calls in which at least one of them participated were intercepted in violation of the statutory directive in 18 U.S.C. § 2518(5). Defendants argue that 96 of these conversations were not subject to minimization, and the officers acted properly in intercepting the calls.

### I.

On September 22, 1972, a panel of three state judges approved an application by the State's Attorney for Litchfield County to overhear and record telephone conversations at the Cornwall, Connecticut home of one Carlin Zerbo. The order gave the state police permission to intercept communications for the purpose of "linking 'Gary' and other unknown parties to narcotics trafficking and ascertaining their source of supply."[1]

Plaintiffs do not challenge the court order under which the police conducted the electronic surveillance of Carlin Zerbo's telephone.[2] Rather they ground their statutory cause of action on the officers' failure to minimize the interception of communications not relevant to the narcotics investigation. Certain facts are undisputed by the parties. Sergeant Valerio, then a corporal with the state police, supervised the wiretap in question. Prior to this time Valerio had participated in five or six investigations involving electronic surveillance of telephone communications. He and other state police officers including defendant Ohradan conducted the surveillance 24 hours a day in shifts of two officers. As set forth in the

1. The court order authorizing the wiretap was "Approved for the period 22 Sept thru 1 Oct 72, subject to the proviso that the wiretapping shall cease when the objective—to obtain additional evidence linking 'Gary' and other unknown parties to narcotics trafficking and ascertaining their source of supply in order that prosecution can be instituted—is first obtained." Exhibit 3, Plaintiffs' Brief in Support of Motion for Summary Judgment and in Opposition to Defendants' Motion for Summary Judgment.

2. From an officer conducting an electronic surveillance of another telephone, defendant Nich-

olas Valerio of the Connecticut State Police Department learned that an individual identified only as "Gary" had used Carlin Zerbo's telephone in conducting narcotics transactions. In addition to this information, in the application for authorization to conduct the Zerbo surveillance, the state police presented reliable evidence that Carlin Zerbo associated with known and suspected drug users and sellers and was known to use and sell drugs of the cannabis type. Based on the foregoing a three-judge panel found that there was probable cause to conduct the surveillance. Conn.Gen. Stats. § 54–41d.

affidavits of Valerio and Ohradan, the officers overheard and recorded all calls on what they termed the "official" or "master" tape. The officers did not edit the tape nor use it when they prepared written inventory summaries of the intercepted calls. When the officers completed the wiretap, they returned the "official" tapes to the custody of the state court that authorized the surveillance.[3] It was the understanding of the intercepting officers, and at this time the official policy of the state police department, that the only calls not to be recorded on the official tape nor monitored aurally were "privileged calls," such as ones between an attorney and the attorney's client.

In addition to the complete recording made on the official tape, the officers recorded selected "pertinent" communications on a second "work" tape used to prepare the call summaries. They testified that during the course of the surveillance they kept detailed records of all calls and categorized each as to its parties and its contents. The officers noted on the call summaries when they determined that a communication was not "pertinent" to the narcotics investigation. In addition, if the monitoring officer made such a determination during the course of a conversation, the officer would discontinue recording on the work tape. If the officer made such a determination after the call had been completed, he erased the conversation from the work tape and made an appropriate notation in his written call summary. In spite of the on-the-spot determination by the monitoring officer that the communication was irrelevant to the investigation—as evidenced by discontinued recording on the work tape—the officer recorded the communication on the official tape and continued to listen to the conversation until its conclusion. The record before this court demonstrates that departmental policy at the time of this wiretap was to intercept aurally and record all communications conducted over a wire-

tapped telephone. At his deposition, in response to inquiry by plaintiffs' counsel, Commissioner Fuessenich agreed that it was

" . . . a department policy . . . in September and October, 1972 that all communications would be intercepted but that notations would be made as to whether those communications were relevant or irrelevant to the investigation then in [sic] proceeding."

Defendants in their interrogatories testified that they understood the minimization requirement to be as follows:

"We believed all conversations were subject to interception under court order in this case, except privileged communications. Minimization accomplished by use of working tape—described above."

## II.

Title III of the Omnibus Crime Control and Safe Streets Act of 1968 regulates wiretapping and other forms of electronic surveillance. 18 U.S.C. §§ 2510–2520. Following the Supreme Court's decisions in *Berger v. New York*, 388 U.S. 41, 87 S.Ct. 1873, 18 L.Ed.2d 1040 (1967) and *Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967), Congress enacted this legislation mindful of the need to strike a balance between the individual's right of privacy and the state's interest in effective law enforcement. The teaching of *Berger* and *Katz* is that the Constitution requires the government to circumscribe its eavesdropping activity so that the wiretap authorization does not amount to the electronic equivalent of a general search warrant. Therefore, when Congress determined that electronic eavesdropping was necessary to infiltrate the ranks of organized crime, it authorized such practices with the clear understanding that electronic surveillance would be strictly supervised and controlled. S.Rep.No. 1097, 90th Cong., 2d Sess., 89

---

**3.** A state statute requires that any tape recordings made during a surveillance be placed in the custody of the court that authorized the wiretap. Conn.Gen.Stats. § 54–41i. The apparent purpose of taping all communications on the official tape was to preserve evidence to counter later assertions by criminal defendants that the content of communications introduced at trial had been selectively edited to a misleading end.

(April 29, 1968), U.S.Code Cong. & Admin. News 1968, p. 2112.

Title 18, section 2518 sets out detailed procedures to be followed when the government undertakes to intercept wire or oral communications in the course of a criminal investigation. Among the requirements contained in the section is the proviso to minimize the interception of innocent communications.[4] Plaintiffs contend that the failure of the state police to make good-faith efforts to minimize the interception of innocent communications is a *per se* violation of the section 2518(5) directive.[5]

The recent Supreme Court pronouncement on the minimization requirement of Title III in *Scott v. United States,* —— U.S. ——, 98 S.Ct. 1717, 56 L.Ed.2d 168 (1978), addresses the question presented in this motion. In *Scott,* pursuant to judicial order, the government intercepted all calls over a particular telephone for a period of one month. The defendant challenged the admission of wiretap evidence obtained in the surveillance on the ground *inter alia* that the evidence was taken in violation of the minimization requirement of Title III. The *Scott* majority accepted the lower court finding that the agents did not make good-faith efforts to minimize, and considered the question whether the agents' subjective disregard of the duty to minimize was a *per se* violation of the statute.

The Court found that the subjective motivation of the agents was not controlling. Rather, it held, the proper standard to assess whether a violation occurred was the objective reasonableness of the actual interceptions. A look at the language of § 2518(5) convinced the Court that, in determining if compliance was achieved, the focus should be on the actions of the intercepting officers and not on their subjective intent. In view of the legislative history that Congress did not intend the Act "to press the scope of the suppression role beyond the present search and seizure law," the Court concluded that the fourth amendment standard of objective reasonableness was the appropriate test of whether the government complied with the minimization provision. *Id.,* —— U.S. ——, 98 S.Ct. 1717, 1724.

---

4. Title 18, section 2518(5) of the United States Code reads:

"No order entered under this section may authorize or approve the interception of any wire or oral communication for any period longer than is necessary to achieve the objective of the authorization, nor in any event longer than thirty days. Extensions of an order may be granted, but only upon application for an extension made in accordance with subsection (1) of this section and the court making the findings required by subsection (3) of this section. The period of extension shall be no longer than the authorizing judge deems necessary to achieve the purposes for which it was granted and in no event for longer than thirty days. Every order and extension thereof shall contain a provision that the authorization to intercept shall be executed as soon as practicable, shall be conducted in such a way as to minimize the interception of communications not otherwise subject to interception under this chapter, and must terminate upon attainment of the authorized objective, or in any event in thirty days."

Substantially similar procedures are required by Conn.Gen.Stats. § 54–41e.

5. To effectuate the provisions of Title III, in addition to the evidentiary sanctions found in § 2515, Congress provided a civil cause of action to compel compliance with the statute's requirements. The present action is prosecuted under the civil damage provision contained in 18 U.S.C. § 2520 which provides:

"Any person whose wire or oral communication is intercepted, disclosed or used in violation of this chapter shall (1) have a civil cause of action against any person who intercepts, discloses or uses, or procures any other person to intercept, disclose, or use such communications, and (2) be entitled to recover from any such person—

(a) actual damages but not less than liquidated damages computed at the rate of $100 a day for each day of violation or $1,000 whichever is higher;

(b) punitive damages; and

(c) a reasonable attorney's fee and other litigation costs reasonably incurred.

A good faith reliance on a court order or legislative authorization shall. constitute a complete defense to any civil or criminal action brought under this chapter or under any other law."

Connecticut General Statute § 54–41r is identical to the federal statute 18 U.S.C. § 2520.

Plaintiffs also claim that they are entitled to relief under 42 U.S.C. § 1983, but the instant motion is limited to the claims pressed under federal and state electronic surveillance statutes.

In applying the standard to the facts in *Scott*, the Court noted that "[b]ecause of the necessarily *ad hoc* nature of any determination of reasonableness, there can be no inflexible rule of law which will decide every case." *Id.* Some of the factors that the Court considered significant in assessing the reasonableness of the interceptions were the length of the calls, the nature and scope of the criminal enterprise under investigation, as well as the point during the surveillance at which the particular interception was made. The trier of fact must weigh the objective facts and circumstances of each actual interception and determine whether at the time the officer was acting reasonably in concluding that continued surveillance was justified.

### III.

Both plaintiffs and defendants in this action contend that there are no disputed material issues of fact on the minimization question.

> "It is a well-settled rule of law that cross-motions for summary judgment do not warrant the court in granting summary judgment unless one of the moving parties is entitled to judgment as a matter of law upon facts that are not genuinely disputed."

6 *Moore's Federal Practice* ¶ 56.13 at 2247. Even when all material facts are uncontested, application of the appropriate legal standard may require the trier of fact to draw inferences or conclusions from such facts. *Nunez v. Superior Oil Co.*, 572 F.2d 1119 (5th Cir. 1978). In a non-jury case, the court may grant summary judgment if trial would not enhance its ability to draw inferences or conclusions. But where one of the litigants has demanded a jury trial, summary judgment may not be granted when the court has determined that reasonable persons could reach different conclusions or draw opposing inferences from the submitted evidence. *See Heyman v. Commerce & Industry Insurance Co.*, 524 F.2d 1317 (2d Cir. 1975); *Croley v. Matson Navigation Co.*, 434 F.2d 73 (5th Cir. 1970).

In the present action the standard for judging whether defendants violated Title III requires the trier of fact to determine the reasonableness of the actual interceptions. Although the parties may agree on facts concerning the surveillance and the contents of the calls intercepted, the reasonableness of the defendants' actions is genuinely disputed. Therefore, defendants having demanded a jury trial, the parties are entitled to have the jury pass on the minimization question.

In view of *Scott v. United States, supra,* it appears that the question of whether the police violated the minimization directive cannot be resolved on a motion for summary judgment for the objective reasonableness of the actual interceptions is a question for the jury. Therefore, the parties' motions for partial summary judgment are denied and it is

SO ORDERED.